

FILED
IN CLERK'S OFFICE

2019 MAY 29  PM 3: 02

U.S. DIST     COURT
DISTRICT     MASS.

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

PAUL JONES

Plaintiff                                          Civil Action No.1:19-cv-11076-FDS

V.

DOLAN CONNLY P.C
JAMES W. DOLAN
BARBARA D. CONNLY
KATHLEEN M. ALLEN
DAVID A. MARSOCCI
CINDY SILVA
BANK OF NEW YORK MELLON
GREGORY A. CONNLY
ORLANS P.C
LINDA ORLANS
ALISON ORLANS
JANE DOE, and JOHN DOE,
SELECT PORTFOLIO SERVICING INC.

Defendants

## **VERIFIED AMENDED COMPLAINT**

### **Parties**

1.   The Plaintiff is a consumer and resident of Stoughton, County of Norfolk, Massachusetts and a citizen of

     the United States.

2.   Defendant Dolan Connly P.C (Dolan) is Law Firm that regularly collect defaulted debts due to another and

     has a usual place of business at 50 Redfield Street, Boston, Ma.

3.   Defendant James W. Dolan (James) is a partner at Dolan Connly P.C and an attorney that regularly collect defaulted

     debts owed to another and a resident of Massachusetts.

4.   Defendant Gregory A. Connly (Gregory) is a partner at Dolan Connly P.C and an attorney that regularly collect

     defaulted debts owed to another and a resident of Massachusetts.

5.    Defendant Barbara D. Connly (Barbara) is an attorney at Dolan Connly P.C that regularly collect defaulted debts owed to another and a resident of Massachusetts.

6.    Defendant Kathleen M. Allen (Kathleen)is an attorney at Dolan Connly P.C that regularly collect defaulted debts owed to another and a resident of Massachusetts concentrates her practice in the areas of real estate law, including landlord-tenant law, condominium development and debt collections for creditors.

7.    Defendant David A. Marsocci (David) is an attorney at the Law Office of Dolan Connly P.C that regularly collect defaulted debts owed to another and a resident of Massachusetts, he concentrates his practice in the areas of real estate law and debt collections for creditors.

8.    Defendant Cindy Silva (Cindy) is an employee of Dolan Connolly P.C a debt collector that regularly collects defaulted debts owed to another and is the property manager for Bank of New York as Trustee for CWABS, Inc and is a resident of Massachusetts.

9.    Defendant Bank of New York Mellon aka Bank of New York Mellon, as Trustee for CWABS, Inc, Asset Backed Certificates, Series 2004-7 (BNY)is a Delaware Corporation and has a usual place of business at 101 Barclays Street New York, NY 10286 that regularly collect defaulted debts.

10.   Defendant Orlans P.C (Orlans) is organized as a professional corporation under Michigan law, with its principle place of business in Troy, Michigan. On March 6, 2017, the firm changed its name from "Orlans Associates, P.C.," to "Orlans PC." On March 10, 2017, Orlans PC filed an assumed name certificate for "Orlans Associates PC." that regularly collect defaulted debts.

11.   Defendant Linda Orlans (Linda) is an attorney licensed to practice law in Michigan, and, on information and belief, a resident of Birmingham, Oakland County, Michigan and an attorney that regularly collect defaulted debts.

12.   Defendant Alison Orlans (Alison) is President, Chief Executive Officer, and Secretary of Orlans PC. On information and belief, Alison Orlans is a resident of Birmingham, Oakland County, Michigan. On

information and belief, Alison Orlans is a law school graduate but not licensed to practice law in Michigan but she that regularly collect defaulted debts.

13. Defendant "Jane Doe" and "John Doe" are placeholders for an indeterminate number of partners or shareholders of defendants that may bear individual culpability for the claims stated in this Complaint and who may be separately liable therefore.

14. Defendant Select Portfolio Servicing, Inc. ('SPS") is a residential loan servicing company with headquarters located at 3217 S. Decker Lake Drive, Salt Lake City, Utah 84119. As of March 31, 2016, SPS serviced more than 400,000 loans nationwide. SPS enters into service agreements with lenders and note holders pursuant to which SPS provides servicing and agency activities for loan portfolios and to regularly collect defaulted debts.

## JURISDICTION

15. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

16. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) in as much as the challenged actions are alleged to have been committed in this District, all Defendants regularly conduct business in this District, and the named Plaintiff reside in this District.

17. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and supplemental jurisdiction exists of the state law claims pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## INTRODUCTION

18. This action seeks relief for unlawful, unfair and deceptive debt collection practices committed by defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John, These Defendants are engaged in a high-volume debt collection practices that includes foreclosing on property's, evictions, sending mortgage statements and demanding money from plaintiff and seeking deficiency judgments.

19. Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John did not strictly comply with paragraph 22 of the mortgage or the statutory power of sale under Massachusetts law, which requires a foreclosing bank to "comply with the terms of the mortgage," G.L. c. 183, § 21.

20. Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe refused to even acknowledge their wrong doing as plaintiff pointed them out as early as 2015-2019, defendants actions became intentional, without regard , no just cause or excuse for the action which outside the penumbra of established concepts of fairness and was unethical and or unscrupulous resulting in personal injury to the plaintiff.

21. Plaintiff states that the proper remedy under these counts of his complaint is to void the April 9, 2019 foreclosure sale, issue an emergency TRO, find for the plaintiff against all the defendants on all counts in this complaint.

22. This approach is consistent with the SJC's recent decision in Pinti & Paiva v The Bank of New York Mellon 1:14-cv-14531-ADB here in this same court, regarding , which held that a foreclosing bank's "***strict compliance with the notice of default required by paragraph 22 was necessary in order for the foreclosure sale to be valid,***" and that the bank's "failure to strictly comply rendered the sale void."

## FACTS

23.   All conditions precedent to the bringing of this action has been performed.

24.   No defendants were served the original Verified Complaint as of May 28, 2019, and no responsive pleading was served May 28, 2019.

25.   The amount in controversy exceeds $75,000 in this complaint.

26. Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe used did not strictly comply with paragraph 22 of the mortgage because the notice of default required by that paragraph was sent by the servicer of the loan (SPS), rather than by the lender BNY, this violated the statutory power of sale under Massachusetts law, which requires a foreclosing bank to "comply

with the terms of the mortgage," G.L. c. 183, § 21.Controlling case law requires strict compliance with paragraph 22 of the mortgage, and Plaintiff alleges that this standard was not satisfied servicer's sending of the notice of default.

27. Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe failed to record an affidavit of compliance required by GL c. 244, §§ 35B and 35C in the Norfolk Registry of deed as of May 28, 2019 after the April 9, 2018 foreclosure as of May 28, 2019.

28. Plaintiff states for the record § 15A is a "statute relating to the foreclosure of mortgages" pursuant to the statutory power of sale, G.L. c. 183, § 21, and that, as with paragraph 22 of the mortgage, strict compliance with § 15A is required, the proper remedy under either these two counts of the complaint are to void the foreclosure.

29.   The date of SPS notice of default to Plaintiff states BNY was the lender and SPS was the servicer of the loan.

30.   Defendants SPS on behalf of BNY notice of default did not satisfy the requirements of paragraph 22 of the mortgage, not because any of the required substance was missing from the notice, but because the notice should have come from BNY as the lender, rather than from SPS as the servicer of the loan.

31.   SPS approach is contray with the SJC's decision in ***Pinti v Emigrant***, which held that a foreclosing bank's "strict compliance with the notice of default required by paragraph 22 was necessary in order for the foreclosure sale to be valid," and that the bank's "failure to strictly comply rendered the sale void." 33 N.E.3d at 1226, the SJC's decided to give it only prospective effect after July 17, 2015.

32.   Defendants SPS & BNY did not strictly comply with § 15A, which requires a foreclosing bank to notify the tax collector (among other third parties) of a foreclosure sale within 30 days of conveying title. G.L. c. 244, § 15A. this lapse invalidates the foreclosure, under several SJC decisions, strict compliance with § 15A is required, and the consequence of non-compliance is the invalidation of the foreclosure sale.

33.   The defendant's Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe refusal to make a reasonable settlement offer forced the plaintiff to incur substantial additional fees and to suffer harm including loss of **consortium, personal injuries** to the deprivation of

the benefits of a family relationship due to injuries caused by all above defendants, Plaintiff suffered an injury's as a result of the all the above Defendant's actions while trying to collect an alleged but nonexistent defaulted debt these action met the threshold of Article III Standing plaintiff suffered a concrete and particularized injury.

34. Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe used "false, deceptive, misleading, unfair, and unconscionable practices in connection with their attempt to collect an alleged but nonexistent defaulted debt from Plaintiff.

35. This case falls within a category of debt collection cases, all defendants conspired to violate Federal & State consumer statue laws and did so by not following Massachusetts Consumer and foreclosure laws when foreclosing.

36. Plaintiff attempted to rectify the situation with the defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe starting as early as July 28, 2015.

37. Defendant's Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe actions caused personal injury to the plaintiff, *all* the Defendants either intended to cause the Plaintiff personal injury or that all the defendants were substantially certain their acts would cause plaintiff personal injury.

38. Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe knew or should have known that their wrongful acts were done with intent to injure plaintiff and did so, and their wrongful acts would almost certainly produce harm (personal injury) to the plaintiff, and their wrongful acts had a high probability of causing plaintiff harm.

39. Defendant's Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe actions were wrong willful, deliberate and done without regard to its consequences and "without just (*unjustified*) cause or excuse" and therefore were malicious within the meaning of § 523(a)(6) / MGL 93a.

40. Defendant's Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe refusal to grant plaintiff relief upon demand, defendants knew or should have known with

knowledge or reason to know that the act or practice complained of was contrary to Massachusetts Unfair & Deceptive Trade Practices Act (MGL93a), Massachusetts Debt Collection Regulation Act 940 CMR *7.00* et seq (MDCRA) , Federal Debt Collection Practices Act (FDCPA) and other Federal & State statues.

41.  Defendants SPS, Dolan, Orlans, Orlans, BNY James, Gregory, Barbara, Kathleen, David are attorneys or Law Firms or corporations that employee 5-100 attorneys that are responsible for overseeing all correspondence sent to the plaintiff, these attorneys should have informed the agent that their actions were contrary to Federal & State laws.

42. All Defendants had no just cause or excuse for the action which outside the penumbra of established concepts of fairness and was unethical and or unscrupulous resulting in personal injury to the plaintiff.

43.  Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe have acted in knowing disregard of the rights of the plaintiff, all the defendants should have foreseen that injury could occur to the plaintiff.

*44.*  Defendants BNY acted as absentee owners who recklessly failed to supervise their out of control agents including Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, Orlans, Linda, Alison, Jane Doe, John Doe.

*45.*  Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe threated to foreclose on consumer's residence and did so after Countrywide Mortgage post acceleration (2005) and BNY post foreclosure (2008).

46.  Defendants BNY, SPS, Orlans, Linda Orlans, Alison Orlans Foreclosed or caused to be foreclosed on or about April 9, 2018, without having legal entitlement to do so, as the defendant BNY had already accelerated the mortgage in 2005 thus cause all amounts to become due in 2005.

47.   BNY also foreclosed on the property on or about Dec 2008 (over 11 years) causing there to be no present right to possession of the property of an enforceable security interest as of 2008 under plaintiff name in the Norfolk Registry of deeds.

48.  On April 9, 2019 when defendants foreclosed on the said property it was exempt by law from foreclosure under plaintiffs name, BNK repurchased the home at the 2008 foreclosure sale, after BNY foreclosed

therefore defendants had no legal entitlement to send plaintiff any monthly statements with fees, or file any foreclose documents in the court or the Norfolk County Registry of deeds regarding the April 2018 foreclosure.

## ARTICLE III STANDING

49. In Spokeo, the Supreme Court reaffirmed the well-established principle that a plaintiff invoking the jurisdiction of an Article III court must establish "injury in fact." Spokeo, Slip op. at 6. In particular, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"

50. Plaintiff has suffered and will continue to suffer harm and an invasion of a legally protected act and has suffered invasion of a legally protected interest and suffered an injury in fact that is concrete and particularized.

51. By defendants second foreclosure and recording made in the Registry of Deeds, this recording is for life, only approximately four years or more of on-time payments will restore the Plaintiff credit score. Plaintiff has suffered from on or about Dec 2008 until Dec 2015 and has rebuilt his credit reports (Scores) which was very hard work as Plaintiff and his family depends on his credit score to make ends meet. Plaintiffs 2007 foreclosure played hand in hand with escalating rates that pushed the plaintiff and his family deeper and deeper into debt from Dec 2008 until Dec 2015.

52. Plaintiff will and has suffered many years of expensive and limited credit and long-term consequences of the first foreclosure (Approximately Dec 2008) and the second April 9, 2018 foreclosure, that will make financial recovery very difficult for the plaintiff for the second time. The components of a FICO score consist of payment history, amounts owed, length of credit history, new credit, and types of credit used. To qualify for a conventional loan, most borrowers will want to see a credit score above 620.

53. The Defendants April 9, 2019 foreclosure, it has the potential to cause Plaintiffs credit scores to drop by 250-280 points, this is contrary to Federal & State Laws, this is an invasion of privacy and is a concrete and particularized injury.

54. While it's common to hear about money issues and foreclosure the plaintiff now again can suffer a tax consequence of such a process. A foreclosure or a filing in the Registry of deeds brings about a property title transfer and subsequent tax assessment. All the defendants do not realize that by conducting a second foreclosure while plaintiff did not even have both legal and equitable title to the property, plaintiff is likely going to face tax implications from the IRS, defendants cannot sell a property and transfer property to themselves a second time and hold plaintiff accountable to bogus fees and $634,000.01 (See Exhibit 7). Non-existing debt and a Deficiency judgment $383,435,82, Plaintiff faces a debt forgiveness or a deficiency judgement of $383,435,82, this is an injury in fact and it is concrete and particularized.

55. Basically, any time debt is forgiven; it is considered a taxable event. The IRS states that any borrowed money that is not paid back is considered as income and is taxable (https://www.irs.gov/newsroom/home-foreclosure-and-debt-cancellation) A mortgage involves the bank or lender granting funds to the owner in return for a promise to pay the funds back. When the owner begins repaying the money, this money is not claimed as income on their tax return. If, however, this debt amount is canceled or forgiven, it will have to be included as income for tax purposes. The loan amount is considered as income because there is no longer an obligation to repay the lender for the same.

56. Once the property is finally sold, the tax consequences come in. The original loan was based on the value of the property, but these values keep changing. If the property is sold for less than it was originally worth, and the bank is unable to recover all the money it had lent, the balance is reported to the property owner and the IRS on a Form 1099-C, Cancellation of Debt. This amount is considered as income and must be reported on the homeowner's income tax form leading to capital gains and income tax applicable, this is a concrete and particularized injury.

57. As a direct consequence of Defendants' acts, practices and conduct, Plaintiff suffered and continues to suffer from loss of consortium, humiliation, anger, anxiety, emotional distress, fear, frustration, embarrassment, loss of sleep, anxiety, depression, loss of appetite and economic injury. plaintiff was enrolled in college but had to drop out due to the stress of receiving a $634,000.01 (See Exhibit 7) alleged but nonexistent debt this was and is a concrete and particularized injury under Article II standing.

SUPREME COURT UNANIMOUS DECISION IN

OBDUSKEY V. McCARTHY & HOLTHUS L.L.P

58. On March 20, 2019, the Supreme Court's unanimous decision in Obduskey v. McCarthy & Holthus L.L.P.
examined liability for violations of the Fair Debt Collection Practices Act (FDCPA) that are committed in
non-judicial foreclosures. Although the Court did not discuss exactly what type of conduct by an entity
whose principal purpose is enforcement of security interests would violate § 1692f(6), it stated as an
example that it is "at least plausible that 'threatening' to foreclose on a consumer's home without having
legal entitlement to do so is the kind of 'nonjudicial action' without 'present right to possession' prohibited
by that section." This is exactly what all defendants did.

59. This is the kind of 'nonjudicial action' without 'present right to possession' prohibited by the FDCPA that
the Supreme Judicial Court pointed to in their order.". Section 1692f(6) states the following conduct
violates the FDCPA:

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property
if—

(A) there is no present right to possession of the property claimed as collateral through an enforceable
security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

60. Obduskey holds that entities whose principal purpose is enforcing security interests are subject only to §
1692f(6) (not other FDCPA provisions) when they conduct non-judicial foreclosures in a manner required
by state law. Defendants BNY, SPS, Orlans, Linda Orlans, Alison Orlans are liable for claims arising from
foreclosures under the entire FDCPA post-Obduskey, because as the Supreme court has stated: 1. Entities
enforcing a security interest when the entity's principal purpose is not the enforcement of security
interests; 2. Entities enforcing a security interest in a manner not by state law (Massachusetts); and
Entities engaged in judicial foreclosure.

61.  Defendants BNY, SPS, Orlans, Linda Orlans, Alison Orlans principal purpose is not the enforcement of security interest it is collecting defaulted debts, there was no legal security interest on the property because the mortgage & note (security interest) was already accelerated in 2005 and foreclosed in 2008, no security interest of plaintiff was enforceable after foreclosure in 2008, defendants so called foreclose in April 9, 2018 should be held by this as null & void on its face.

## PREVIOUS ACCELERATION OF MORTGAGE & FORECLOSURE

62.  On June 22, 2004, Plaintiff executed a negotiable promissory note and a security interest in the form of a mortgage approximately $274,550.00 the mortgage document was filed as document number Book 22224, Page 219 in the Norfolk Registry of Deeds (*See Exhibit 1*).

63.  On August 5, 2005 Plaintiff received a notice of acceleration from Countrywide Mortgage (Servicer) thus accelerating the mortgage and the total amount became due (*See Exhibit 2*).

64. On December 6, 2006 BNY was issued an Order of Notice to foreclose from Massachusetts Land Court's, a true and correct copy of the Massachusetts Land Court's Order is attached hereto as *Exhibit 3*.

65. Bank of New York, Trustee, by way of Ablitt law firm, served upon the plaintiff its January 12,2007 Notice of Intention to Foreclose Mortgage and of Deficiency After Foreclosure of Mortgage, the January 12, 2007 Notice of Mortgage Foreclosure Sale, and the advertised January 12, 2007 Notice of Mortgagee's Sale of Real Estate (collectively, *Exhibit 4*).

66. On or about January 22, 2007 BNY by way of Ablitt Law firm Plaintiff home 572 Park Street Stoughton, Ma 02072 was foreclosed at an auction by BNY and was repurchased by BNY for approximately $320,000.

67. On approximately February 27, 2008 BNY by way of Ablitt Law firm, served upon the plaintiff a Certificate of Entry, a true and correct copy of the February 25, 2008 Certificate of Entry is attached hereto as **Exhibit 5**.

68. On approximately February 27, 2008 BNY by way of Ablitt Law firm, served upon the plaintiff a Foreclosure Deed, a true and correct copy is attached hereto as **Exhibit 6**.

69. Plaintiff put defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe of notice that their actions were contrary to the FDCPA, MGL 93a and other Federal & State statues by sending multiples notices , demand letter and exhibits to clearly point out that there was no debt due from plaintiff, because an acceleration and foreclosure had already taken place in 2005 & approximately Dec of 2008.

70. Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe ignored all plaintiff's correspondence, plaintiff even informed all defendants that their action was wrong, deliberate, done without regard to its consequences, malicious, without just (unjustified) cause or excuse and therefore has caused Plaintiff Paul Jones personal injury.

71.  BNY actions should be imputed to all the defendants under vicarious liability based upon their vicarious liability flowing from the actions of BNY.

**FACTS REGARDING DEFENDANT**

**SELECT PORTFOLIO SERVICING INC (SPS)**

72. Plaintiff Paul Jones claims in this lawsuit that all defendants' actions were contrary to the FDCPA, MGL 93 a and other State & Federal Laws while attempting to collect an alleged but nonexistent debt from plaintiff. The defendant Select Portfolio Servicing asserted that the company is a "special servicer" of residential mortgage loans, which collects on defaulted or delinquent mortgages.

73. To collect a debt in a non-judicial state like Massachusetts, the defendant Select Portfolio Servicing must follow federal and Massachusetts State laws.

74. Despite the 2005 Acceleration and Foreclosure on or about February 2008 on Plaintiffs property located at 572 Park Street, Stoughton, Ma 02072, the plaintiff received a notice that the Bank of America mortgage was transferred to Select Portfolio Servicing for collection on or about July 16, 2015. Weeks later, plaintiff received a "notice of debt" from Select Portfolio Servicing on or about July 24, 2015, stating that late charges would accrue and "vary from day to day."

75. On approximately July 13, 2015 plaintiff received a notice from Defendant SPS that stated, "We are pleased to inform you that the servicing of your 1st mortgage loan will be transferred from Bank of America N.A to Select Portfolio Servicing, Inc. (SPS) effective July 16, 2015" This notice had a payment coupon attached to it See Exhibit 7.

76. Defendant SPS sent plaintiff approximately 33 Unfair & Deceptive mortgage statements the first being on July 29, 2015 approximately April 12, 2018 which defendant SPS demanded from plaintiff $339,499.00, this monthly statement stated plaintiff owed "Principal $477.28, Interest of 1452.30, Escrow (Taxes & Insurance) of $864.11, Regular Monthly payment of $2,793.00, Unpaid late charges $876.81, Other charges and fees of $15.084.00 and Charges / Fees this period $876.81,Past Due payments of $320,745.35 Total amount Due $339,499.98 as of here after Fees" approximately April 18, 2018 defendant mortgage statement stated plaintiff owed approximately $634,000.01 (See Exhibit 7).

77. Defendant SPS mortgage statements were confusing, unfair, deceptive, false, baffling, willful and caused significant harm and personal injurie to plaintiff.

78. These mortgage statements were contrary to the Federal Debt Collection Practices Act (FDCPA), The Massachusetts Unfair & deceptive Trade Practices Act (MGL 93a), The Massachusetts Debt Collection Regulations Act (MDCRA) and other Federal & State law.

79. Plaintiff informed defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS that plaintiff did not have a mortgage with BNY in his name since Dec 2008.

80. Defendant's actions were Willful, **Intentional,** Malicious wrong, without just, cause or excuse" and therefore "malicious" within the meaning of § 523(a)(6), all the defendants intended to cause and did cause personal injury and there was a substantial certainty the injury would result from all the defendants act.

81. Defendant SPS has no offices in the state of Massachusetts therefore plaintiff needed not to send an MGL 93 demand letter, but plaintiff did so.

82. Plaintiffs loan had been accelerated in 2005 and foreclosed upon on or about December 2008 prior to SPS becoming the servicer, no Mortgage Statements should have been sent to plaintiff to demand money that included Principal, Interest, Escrow (Taxes & Insurance), Regular Monthly payment, Unpaid late charges, Other charges and fees and Charges / Fees late fees, mortgage statements could lawfully be imposed or collected by SPS, operating as BNY agent, unless specifically authorized by the mortgage agreement. Plaintiffs standard form mortgage agreements do not permit the charging and collection of any of the above fees post-acceleration-foreclosure, this is and was contrary to Federal & state Laws.

83. Despite acceleration of the Plaintiffs loan in 2005 and a 2008 foreclosure, Defendant Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, Orlans, Linda, Alison, Jane Doe, John Doe, SPS operating as BNY agent, falsely represented that the above fees could and would be charged to Plaintiffs loan and SPS would foreclose if Plaintiff failed to make payments in full by a date certain.

84. On approximately December 17, 2017, Defendant SPS mailed a standard form mortgage statement to Plaintiff which stated that, "This account has been accelerated, which means that all outstanding amounts are due." The SPS December 17, 2017 mortgage statement further stated, "If payment is received after January 15, 2018, fees will be assets late fee will be charged." That mortgage statement indicated that there were "unpaid late charges and other charges and fees, defendant SPS has these documents in their possession.

85. There is thus no provision in Plaintiff mortgage agreement which permits any of the defendants to charge or collect a late fees post-acceleration and post foreclosure, whether for itself or on behalf of BNY or any other lender or note-holder. Nevertheless, all defendants, operating as BNY agent, continued to assess plaintiff bogus fees, these acts by all defendant on behalf of BNY is contrary to Federal & State laws.

86. On several occasions' defendant Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS ordered an Inspection of the property located at 572 Park

Street and charged it to the plaintiff, plaintiffs video surveillance of the property capture individuals

remove car covers from his car and taking the license plates down on paper.

87. On several occasions' plaintiff came home from work to find that someone had entered the

residence and left the front and side door unlocked, thus leaving plaintiffs property at risk of being

stolen, this caused plaintiff anxiety, emotional distress and fear.

88. Upon information and belief, SPS utilizes a software-based servicing system

which automatically orders property inspections, and charges the borrower's account for the

inspections, if a borrower is in default. The only criteria for the inspection to be ordered and

charged is that the loan has been in default for a certain number of days. The inspection is

ordered and charged regardless of whether there is a lawful and reasonable basis for ordering the

inspection or whether the borrower may be legally charged for the inspection.

89. SPS and its automated servicing system, intentionally ignores whether Plaintiff, are living in their

homes at the time of the inspections, even if an individual has provided proof of occupancy, or

otherwise have been in contact with SPS by telephone or written correspondence.

90. Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe,

John Doe, SPS never acted on behalf of a principal that had the right to enforce the obligation of the note &

mortgage, therefore the April 9, 2018 foreclosure is should be considered NULL & VOID.

91. When a servicer (SPS) seeks to foreclose as the agent for the owner or holder of the loan, the servicer must

meet two basic tests. First, the servicer must act on behalf of a principal that has the right to enforce the

obligation. Second, the principal must have delegated authority to the servicer to perform the particular

activity in question, BNY or SPS did not have the authority to conduct a second foreclosure there was no

legal entitlement or active security interest note and or mortgage.

92. All Defendants acted as agent for BNY and SPS, therefore when any defendants took any court

actions against plaintiff it triggered actions that were contrary to the FDCPA, MGL 93a, MDCRA &

other violations of Federal & State Laws.

93. Plaintiff is within statute of limitations of the MGL 93A claims, MDCRA, FDCPA and other Federal & State violations and the alleged personal injury which gave rise to the lawsuit.

94. On approximately April of 2017 defendant BNY hired defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS to foreclosed on 572 Park Street Stoughton, Ma 02072 for a 2nd time and sent plaintiff a bill for over \$634,000.01 (See Exhibit 7) this bill is post 2008 foreclosure and post acceleration of 2005 these actions and conduct by the defendants were and is contrary to the above mentioned Federal & State Laws in this complaint.

## FACTS REGARDING DEFENDANT ORLANS PC

95. In 1998, Linda Orlans founded in Troy, Michigan, the firm that was to be known for many years as Orlans Associates PC, one of the largest foreclosure firms in Michigan.

96. In approximately 2007, Linda Orlans formed Orlans Moran PLLC as a Michigan professional limited liability corporation, with operations based in greater Boston, to provide substantially similar mortgage default (foreclosure) services in Massachusetts and surrounding states. In early 2017, Linda Orlans and her daughter, Alison formed Orlans PC in a transaction whereby Orlans Moran PLLC was merged into Orlans Associates PC, whose name was changed to Orlans PC.

97. Orlans PC operates from offices in Troy, Michigan, Waltham, Massachusetts, Rockville, Maryland, Leesburg, Virginia, and Williamsburg and Georgetown, Delaware. It provides foreclosure services for properties located in some 14 jurisdictions, including, Michigan, Massachusetts, Maryland, and Virginia.

98. Under both the FDCPA, MGL 93a, MDCRA statutes courts apply an objective "least sophisticated consumer" standard to determine whether communications are misleading.

99. This case falls within a category of wrongful foreclosure, personal injury debt collection case. A form letters and notices from Orlans PC that are the subject of this Complaint are misleading in violation of both Federal and State laws because they suggest to consumers that they were from an attorney, when in fact they were

not. Instead, these letters were generated and sent by non-attorney personnel with minimal or no substantive attorney review or involvement.

100.   All Defendants knew or should have know that a previous acceleration in 2005 and a previous foreclosure had accrued on 572 Park Street Stoughton, Ma (Plaintiff informed them in writing), and by Orlans P.C sending plaintiff Notices would be contrary to Federal & State laws and would trigger violations Federal & Statues.

101.   On information and belief, Orlans PC is, and has for many years has been, the second largest foreclosure firm in Michigan based on number of foreclosures processed. At all relevant times Orlans PC, in the ordinary course of its business, regularly engaged in the practice of collecting defaulted debts on behalf of other individuals or entities.

102.   Defendants Orlans, Linda Orlans, Alison clients are, and Orlans Moran's clients were, mostly banks, other investors and lenders, and mortgage servicers who require "default services," i.e., the foreclosure of mortgages on real property in the event of an alleged default.

103.   Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS is engaged in the business of foreclosing on homes, and a large portion of its business derives from its foreclosure practice.

104.   At all relevant times Orlans PC, in the ordinary course of its business, regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

105.   According to its website, www.orlanspc.com, the firm "is the preferred legal services provider of over 200 real estate and financial services companies." On information and belief, Orlans PC operates in some 14 states conducting Judicial and non-Judicial foreclosures and are debt collectors that regularly collect debts due to another.

106.   Orlans PC's clients are, and Orlans Moran's clients were, mostly banks, other investors and lenders, and mortgage servicers who require "default services," i.e., the foreclosure of mortgages on real property in the event of an alleged default.

107. Orlans PC is engaged in the business of foreclosing on homes, and a large portion of its business derives from its foreclosure debt collection practice.

108. At all relevant times Orlans PC, in the ordinary course of its business, regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

109. According to its website, www.orlanspc.com, the firm "is the preferred legal services provider of over 200 real estate and financial services companies." On information and belief, Orlans PC operates in some 14 states.

110. Orlans PC prides itself on its "lean" operations. According to its website, it "is an overwhelmingly different approach to legal services: refined processes and a powerful investment in IT produces precision, quality, and results." In a recent interview, Linda Orlans touted her firm for "creating a more capable, more responsive and more efficient entity to serve a growing client base." According to the firm's website, "[s]implicity isn't just a word for us. It is a mantra that is intertwined deep within our culture as we strive to simplify both our clients' lives and each other's."

111. The firm says that its "pioneering legal simplicity and striving to make the law more accessible and affordable" for national banks, credit unions, consumer loan finance companies, loan servicers, investors, and other clients.

112. In its job descriptions for posted attorney openings the firm describes its practice as "high volume" and "fast paced.".

113. As of May 16, 2018, Orlans PC employed 12 attorneys licensed to practice law in Michigan, including Linda Orlans, unlike most law firms, Orlans PC's website does not list its attorneys.

114. According to its listing on monster.com, a popular online job search and application service, Orlans PC has between 500 and 999 employees across its operations, assuming Orlans PC has 30 licensed attorneys (including the 12 licensed in Michigan, its headquarters), and only 500 employees (the very bottom of the range in its monster.com listing), the attorney-to-staff ratio would be less than one in 16. If Orlans PC has 500 employees, of which 30 are attorneys, then some 6% of its employees are attorneys.

115.    On information and belief, other law firms in Michigan and Massachusetts have substantially fewer staff
        in relation to attorneys than Orlans PC.

116.    In 2012, The Managing Partner Forum, working with ALM Legal Intelligence and The National Law
        Journal, conducted a comprehensive survey of mid-size US law firms. (ALM Survey.) Some 196 firms, with
        nearly 10,000 lawyers, participated.

117.    The ALM Survey found that in 2012 law firms averaged 83 support staff per 100 lawyers (ratio of 0.83
        staff to one lawyer). If Orlans PC has a total of 30 lawyers and had an average ratio of support staff to
        lawyers, it would have approximately 25 support staff for a total of 55 employees (rather than 500 or more).
        Alternatively, if Orlans PC has 500 employees and had an average ratio of support staff to attorneys among
        mid-sized American law firms, it would employ approximately 273 attorneys rather than less than 50.

118.    The vast majority of non-commercial residential property foreclosures conducted by Orlans PC in
        Michigan and in other states have been pursuant to Judicial & non-judicial foreclosure statutes.

119.    In Massachusetts, the vast majority of Orlans PC's foreclosures have been pursuant to Massachusetts
        foreclosure by advertisement statute.

120.    In plaintiff's foreclosure by advertisement proceeding in Massachusetts handled by defendant Orlans
        PC, Orlans PC has sent letters to the Plaintiff in substantial conformity with Exhibits 8,9 and to this
        Complaint, in that each such letter:

        a. Was on Orlans P.C firm letterhead;

        b. Displayed Orlans P.C;

        c. Identified Orlans PC's client as the creditor or servicing agent;

        d. Indicated that Orlans PC was a law firm retained to foreclose the debtor's mortgage;

        e. Did not disclaim that it was from an attorney;

        f. Was (with rare exception) unsigned by an individual Orlans PC lawyer; and

        g. Contained the typographic text "By its attorneys Orlans Associates, P.C." or "Very truly yours Orlans

        P.C "or "Orlans PC" at the end of the letter in the signature block.

121.   These letters were and are contrary to the FDCPA, MGL93a MDCRA and other Federal & State Laws.

122.   Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS knew or should have know that these letters to plaintiff, plaintiffs' spouse and plaintiffs' job were contrary to the FDCPA, MGL 93a, MDCRA and other Federal & State Laws, see Exhibit 9.

123.   Orlans PC operates from offices in Troy, Michigan, Waltham, Massachusetts, Rockville, Maryland, Leesburg, Virginia, and Williamsburg and Georgetown, Delaware ***Judicial & non-Judicial states***. It provides Judicial & Non-Judicial foreclosure services for properties located in some 14 jurisdictions.

### The Orlans PC Foreclosure Letter

124.   From on or about March 2015 until February 1, 2019 Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS sent or caused to be sent to plaintiff, plaintiffs spouse and plaintiffs job (573 Park Street, Stoughton, Ma, 24 Deckard Street Dorchester, Ma and 79 Thompson St, Springfield, Ma ) by U.S. Mail a letters informing him that defendants had been retained by BNY to foreclose on his residence that he occupied at 572 Park Street Stoughton, Ma 02072. A true and correct copy of the letters is attached as ***Exhibit 10*** hereto,

125.   On or about March 1, 2018 Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS sent or caused to be sent to plaintiff and people other than the plaintiff a "Notice of Intention to Foreclose and of Deficiency After Foreclosure.

*126.*   The letter was sent after post acceleration 2005 and foreclosure in December 2008. Orlans P.C knew or should have known that these letters to plaintiff, plaintiffs' job and plaintiffs' spouse were contrary to the FDCPA, MGL 93a, MDCRA and other Federal & State consumer Laws, ***See Exhibit 9.***

127. On or about April 10, 2018 Plaintiff sent Defendant Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS a MGL 93a Demand Letter, Preservation Notice, FDCPA Validation request and a Notice of Intent, *See Exhibit 10*.

128. On or about April 20, 2018 Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS sent or caused to be sent plaintiff and people other than the plaintiff a "Notice acknowledgement of receipt of correspondence from Plaintiff (MGL 93a, Preservation letter, FDCPA request & Notice of Intent) *See Exhibit 10*.

129. On or about August 31, 2018 Dolan, James, Gregory, Cindy , Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS sent or caused to be sent plaintiff and people other than the plaintiff an unsigned "notice of Service Members Civil Relief Act (50 USC App. 501-596)(SCRA) (*See Exhibit 11)* to plaintiffs home, Job and mothers home, Orlans P.C knew from corresponding with plaintiff that plaintiff receives all his correspondence at his residence the subject property.

130. On September 19, 2018 Defendant Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS mailed or caused to be mailed a notice that stated plaintiffs' total debt was *$630,935.82*, these notices went to three address 1. Plaintiffs residence 572 Park Street, Stoughton, Ma 02072 2. Plaintiffs mothers' home (Addressed to Plaintiffs spouse) 24 Deckard Street Dorchester, Ma 02121 3. Plaintiff Job 79 Thompson Street, Springfield, Ma 01109 (See Exhibit 11) Defendants Orlans letters were not signed from any attorney office.

131. On April 9, 2018 defendants Dolan, James, Gregory, Cindy , Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe or SPS held a foreclosure sale upon 572 Park Street Stoughton, Ma 02072, post 2005 acceleration & Post foreclosure 2008 there was no mortgage & note to enforce in plaintiffs name this was contrary to **MGL c. 244 § 14, c. 183 § 21**, MGL 93a, MDCRA, FDCPA and other Federal & State Statutes.

132. The mortgage debt referenced all of defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS correspondence to Plaintiff arose out of transactions

in which the money, property, insurance, or services that are the subject of the transaction were primarily for personal, family, or household purposes.

133.   Plaintiff was confused by defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS Foreclosure Correspondence in that it appeared to be from an attorney, but was not signed by one, and did not identify the full name of an attorney.

134.   Plaintiff was not certain whether or not defendants Orlans foreclosure Letters and correspondence was from an attorney, the suggestion in the correspondence that it was from an attorney raised plaintiff's anxiety.

135.   The appearance that the defendants Dolan, James, Gregory, Cindy ,Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS correspondence & foreclosure Letters may have been from an attorney suggested to plaintiff that an attorney may have conducted an independent investigation and substantive legal review of the circumstances of his alleged defaulted account, such that his prospects for avoiding foreclosure and a *$630,935.82* debt were diminished.

136.   The second Foreclosure was so Fundamentally unfair that Plaintiff is entitled to affirmative equitable relief, a Temporary Restraining Order (TRO) specifically the setting aside of the foreclosure sale as defendants' failure to comply strictly with the power of sale provided in the mortgage as there was no mortgage to foreclose on, the second foreclosure that happen on or about April 9, 2018.

137.   Plaintiff has and will suffer economic lost due to a second record being published at the Norfolk registry of deeds, and this foreclosure can become part of Plaintiff credit history, deficiency judgment, plaintiff has been personally injured.

138.   All the defendant's communications to the plaintiff was contrary to the FDCPA in at least 8 ways, as plaintiff did not have a mortgage and or note since the first foreclosure on or about December 2008.

139.   The FDCPA requires a "notice of debt" to contain certain information for the debtor and be mailed to the debtor within five days of first contacting the debtor about the debt. This lawsuit maintains all the defendants missed that five-day deadline in its communications with the plaintiff.

## FACTS REGARDING DEFENDANTS DOLAN, JAMES, GREGORY,
## BARBARA, KATHLEEN, DAVID, CINDY

140. Defendants Dolan, James, Gregory, Barbara, Kathleen, David, Cindy are part of the law firm Dolan Connly.

141. On April 24, 2018 Defendants BNY Dolan, James, Gregory, Barbara, Kathleen, David, Cindy mailed plaintiff or caused to be mailed a Notice Under Massachusetts General Laws Chapter 186A based on BNY April 9, 2018 foreclosure of 572 Park Street Stoughton, Ma 02072.

142. On April 24, 2018 Defendants BNY Dolan, James, Gregory, Barbara, Kathleen, David, Cindy also mailed a Change in Ownership Occupant Questionnaire -Foreclosure document, this document stated that on April 9, 2018 BNY and its agent defendant SPS foreclosed and BNY became the new owners of the property located at 572 Park Street, Stoughton, Ma 02072, on the back of the letter it stated were to send money, this document was Unfair & Deceptive and was contrary of the FDCPA, MGL 93A and other Federal & State laws on its face (See Exhibit 12).

143. This Change in Ownership Occupant Questionnaire -Foreclosure document also stated, "the representative responsible for management of the subject premises and for the collection of rents and use and occupancy charges is Cindy Silva." When due and requested, payment of rent and use of occupancy charges may be delivered to Cindy Silva at P.O Box 815 Dracut, MA 01826, telephone number (978) 821-9806 Fax (617) 506-6019 between the hours of 9:00 am to 5 pm on all business days. Payment must be in the form of Cash, personal check or cashier's check made payable to BNY and shall be made in person or by mail to the above-named agent at the address referenced above".

144. Defendants Dolan, James, Gregory, Barbara, Kathleen, David, Cindy knew or should have known that this document was contrary to FDCPA, MGL 93a, Massachusetts Debt Collection Regulation Act and outer Federal & State laws.

145. These Notices that defendants Dolan, James, Gregory, Barbara, Kathleen, David, Cindy filed or caused to be filed was contrary to the FDCPA, MDCRA, MGL 93a and other state laws as the defendants had no right to do so.

146. Defendants BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda Orlans, Alison Orlans knew or should have known that there was no legal entitlement to foreclose or send any

related notices regarding the April 9, 2018 foreclosure, this action was and is prohibited by the FDCPA, MGL 93a, Massachusetts Debt Collection Regulation Act and other Federal & State laws.

147.   As previously stated in this lawsuit that Defendants BNY, SPS, Dolan, Orlans, Linda Orlans, Alison Orlans, Dolan, James, Gregory, Barbara, Kathleen, David, Cindy, Jane Doe or John Doe  had no right to foreclose on the property or proceed with any attempt to evict or disable the above mention property, as there was not a mortgage or note on the home due to the previous foreclosure that occurred on approximately Feb of 2008 and the 2005 acceleration of the mortgage..

148.   All actions defendants BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda Orlans, Alison Orlans took regarding the April 9, 2018 foreclosure were contrary to the FDCPA, MGL 93a and other federal & state laws.

149.   On or about April 26, 2018 plaintiff sent the defendants BNY, Dolan, James, Gregory, Barbara, Kathleen, David, Cindy a MGL 93a demand notice, preservation notice, FDCPA validation request and notice of intent Defendant Dolan answered on or about May 2, 2019 (See Exhibit 13).

150.   Defendants BNY, Dolan, James, Gregory, Barbara, Kathleen, David, Cindy mailed filed or caused to be mailed or filed an eviction proceeding in the Stoughton Court regarding the April 9, 2019 foreclosure on the above property to the plaintiff on dates of April 15, 2019, April 29, 2019 these acts are contrary to the FDCPA, MGL 93a MDCRA and other Federal & State laws (See Exhibit 14).

151.   On or about March 29, 2019 BNY, Dolan, James, Gregory, Barbara, Kathleen, David, Cindy mailed filed or caused to be mailed a notice to quit to plaintiff they alleged it was delivered to the plaintiff by constable, plaintiff never received a copy from the constable plaintiff surveillance cameras show no constable on about March 29, 2019 at his residence.

152.   Plaintiff plans to propound evidence and depose the constable and the above defendants to flush out the truth.

153.   Defendants BNY, Dolan, James, Gregory, Barbara, Kathleen, David, Cindy actions have caused plaintiff personal injuries, loss of sleep, loss of consortium.

154.   The plaintiff sent all defendants BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda Orlans, Alison Orlans debt validation notices and they all failed to validate the debt and

continued collection activities which is contrary to the FDCPA, MGL 93, MDCRA and other Federal &
State Laws.

155.    The plaintiffs base their contention that the foreclosure sale is void because it violated § 15A the SJC
        has held that violations of certain statutory requirements pertaining to foreclosure sales pursuant to
        Massachusetts General Laws Chapter 244 would render them void.

156.    Defendants BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda
        Orlans, Alison   Orlans, Jane Doe & John Doe failed to file an affidavit that showed compliance with the
        power of sale and "the law." (M.G.L. c. 244, § 14) were complied with.

## COUNT I

### VIOLATION OF FAIR DEBT COLLECTION
### PRACTICES ACT (FDCPA), 15 U.S.C. §1692
### BY DEFENDANT BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans,

### Linda Orlans, Alison   Orlans, Jane Doe & John Doe

157. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-
alleged here.

158. Plaintiff was in default when servicer Defendants began servicing his loan, the loan and Note was in
default as of August 2005.

159.Defendants notices contained language that stated the Plaintiff is obligated to pay money, it also stated
where the money should be sent.

160.FDCPA 15 U.S. Code § 1692f.Unfair practices

161.    Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. §1692

162.    Defendants are debt collectors within the meaning of FDCPA, 15 U.S.C. §1692

163.    Defendants violated the FDCPA, Defendants violations include, but are not limited to, the following:

164.    Defendants violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to
        harass, oppress, or abuse any person.

165.    Defendants violated 15 U.S.C. §1692e(2) by falsely representing the character, amount, or legal status of
        any debt.

166.   Defendants violated 15 U.S.C. §1692e(6) by sale or transfer of any interest in the debt will cause the consumer to lose any claim or defense to payment of the debt.

167.   Defendants violated 15 U.S.C. §1692e(8) by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

168.   Defendants violated 15 U.S.C. §1692e (10) using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

169.   Defendants violated 15 U.S.C. §1692e (11) by the failure to disclose in the initial written communication with the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector.

170.   Defendants violated 15 U.S.C. §1692e (14) by the use of any name other than the true name of the debt collector's business.

171.   Defendants violated 15 U.S.C. §1692f (1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

172.   Defendants violated 15 U.S.C. §1692f (6) taken or threatened to unlawfully repossess or disable the consumer's property.

173.   Defendants violated 15 U.S.C. §1692g by, within five days after the initial communication with Plaintiff in connection with the collection of any debt, failing to send Plaintiff a written notice containing a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and a statement that, upon the consumer's written request within the thirty-day period, the debt collector will

provide the consumer with the name and address of the original creditor, if different from the current creditor.

174.   Defendants violated § 1692 b(1) Contact of Third Party: Failed to identify themselves, or failed to state that collector is confirming or correcting location information

175.   Defendants violated § 1692 b(2) Contact of Third Party: Stated that the consumer owes any debt § 1692 b(3) Contact of Third Party: Contacted a person more than once, unless requested to do so

176.   Defendants violated § 1692 c(a)(3) At place of employment when knows that the employer prohibits such communications.

177.   Defendants violated § 1692 c(B) With anyone except consumer, consumer's attorney, or credit bureau concerning the debt.

178.   Defendants violated § 1692 e(10) Any false representation or deceptive means to collect a debt or obtain information about a consumer

179.   Defendants violated § 1692 Brought a legal action that they are not authorized to bring.


**WHEREFORE,** Plaintiff prays that this honorable Court award him damages from Defendants BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva ,Orlans, Linda Orlans, Alison   Orlans, Jane Doe & John Doe for the claims set forth herein including litigation fees and costs, sleep and emotional stress, personal injuries, Compensatory, Actual, Statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) from each defendant;  and punitive damages, attorney fees, damages to plaintiffs credit and any other and further relief which is just and proper under the circumstances.

## COUNT II

## MORTGAGE POWER OF SALE

## FAILURE TO COMPLY WITH PARAGRAPH 22 OF THE MORTGAGE

### DEFENDANTS Dolan, James, Gregory, Cindy, Barbara, Kathleen,

### David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe

180. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged here.

181. Section 21. The following "power" shall be known as the "Statutory Power of Sale", and may be incorporated in any mortgage by reference:

## POWER OF SALE

But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

**(Emphasis added)**

182. As emphasized above, the foreclosure by power of sale requires that a foreclosing bank must "comply with the terms of the mortgage .... G.L. c. 183, § 21

183. If a bank fails to strictly comply with the Power of sale then the foreclosure is **void** *U.S. BANK NATIONAL* **ASSOCIATION** *.v.* **John** *SCHUMACHER 467 Mass 421,428 (2014)* therefore the resulting foreclosure sale was wrongful, without legal effect, and void.

184. BNY, acting by and through defendants SPS, Orlans, Linda Orlans, Alison   Orlans, Jane Doe & John Doe serve and published statutorily mandated notices pursuant to GLM c 244, §§ 14 and 35A, asserting authority to foreclose by mortgage & note on April 9, 2018 that did not and does not exist.

185. All Defendants Said notices do not meet the statutory requirements and are void and without legal effect. The foreclosure conducted (April 9, 2018) based on improper mailed or published legal notices is wrongful, void, and without legal affect.

186. BNY, acting by and through defendants SPS, Orlans, Linda Orlans, Alison Orlans, Jane Doe & John Doe represented to the Land Court authority to exercise a power of sale based on a mortgage & note that did not exist at the time of the representation. The misrepresentation result in void or voidable judgments of the Land Court.

187. The servicer of 572 Park Street Stoughton, Ma SPS sent a notice of default and a notice of acceleration on or about January 2018 at the time these notices were sent SPS was not the "Lender" as required by the Mortgage power of sale" clause.

188.Therefore the notice of default & acceleration was deficient, and the power of sale was not complied with prior to the April 9, 2018 foreclosure, therefore the April 9, 2018 foreclosure is void.

189. Plaintiff has suffered personal injuries, damages as a result of defendants' BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda Orlans, Alison Orlans, Jane Doe & John Doe conduct.

190. Plaintiff is entitled to a declaratory judgment determining that the foreclosure sale of the property mentioned in this law suit is void and setting aside the sale by defendants BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda Orlans, Alison Orlans, Jane Doe & John Doe recording the April 9, 2018 foreclosure sale was wrong and is void and should be set aside and cleared from the Norfolk Registry of deeds.

191. The plaintiffs base their contention that the foreclosure sale is void because it violated § 15A the SJC has held that violations of certain statutory requirements pertaining to foreclosure sales pursuant to Massachusetts General Laws Chapter 244 would render them void.

**WHEREFORE,** plaintiff respectfully requests that this Honorable Court, Assume jurisdiction over this matter; Issue declaratory and/or injunctive relief setting aside the foreclosure sale (April 9, 2018) of above mentioned property as void or voidable and in violation of statute and public policy; Issue an injunction and/or declaratory relief to prevent further improper foreclosure related proceedings; issue an injunction preventing assessment or collection of attorney fees and charges for improper foreclosure and eviction proceedings based on the April 9, 2018 foreclosure; *issue a Temporary restraining order (TRO)* in the Stoughton Court regarding any eviction proceedings, Award damages, attorney fees, and costs, Issue a temporary and/or permanent injunction of the eviction proceedings pending against plaintiff based on the April 9, 2018 foreclosure, Award such other relief as the Court deems necessary in equity and the interests of justice.

## COUNT III

### VIOLATION OF CHAPTER 93A

### DEFENDANTS BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda Orlans, Alison  Orlans, Jane Doe & John Doe

192. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged here.

193. Plaintiffs sent to the Defendants BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda Orlans, Alison  Orlans, Jane Doe & John Doe by certified mail a written demand for relief, identifying the claimants and reasonably describing the unfair and deceptive acts or practices relied upon and injuries suffered. A copy of said demand is attached to complaint.

194. Defendants employed unfair or deceptive acts to collect the Debt, in violation of

M.G.L. c. 93A § 2.

195. All the Defendants' unfair and deceptive practices were willful and knowing within the meaning of M.G.L. c. 93A.

196. Beyond theories of vicarious liability and holding defendants BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda Orlans, Alison  Orlans, Jane Doe & John Doe liable for their own acts and conduct towards Plaintiff.

197.The damages awarded should be multiplied under Ch. 93A, § 11] particularly where, as here, all the defendants' acts are willful, malicious and unjustified.

198. Defendant's failure to comply with these provisions constitutes an unfair or deceptive act under M.G.L. c. 93A § 9 and, as such, Plaintiff is entitled to double or treble damages plus reasonable attorney's fees.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiff against Defendants for: (1) Statutory damages; (2) Actual damages equal to any unauthorized interest paid; (3) Treble damages for violations of G.L. c. 93A; (4) Attorneys' fees, litigation expenses and costs of suit; (5) Compensatory, nominal and punitive damages; (6) A declaration that Defendants may not add interest to a debt for a period prior to the date of 2005 acceleration and or Dec 2008 foreclosure demand or breach, and may not include prejudgment interest in the amount sought in a court; (7) actual and or statutory damages, and punitive damages, attorney's fees and costs. (8) An injunction prohibiting Defendants from demanding such; (8) Such other and further relief as is appropriate.

## COUNT IV

### VIOLATION OF GL c. 244, §§ 35B and 35C

**Defendants BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda Orlans, Alison  Orlans, Jane Doe & John Doe**

199. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged here.

200. All Defendants failed to state and file an affidavit that stated (That meets with respect to GL c. 244, §§ 35B and 35C.) it was made under oath or as a sworn statement, and that it was made of the affiant's own personal

knowledge. The affidavit did not include a detailed description of the basis of the affiant's claimed personal knowledge, with reference to the sources of information relied upon as well as a statement as to why those sources are accurate and reliable.

201. The affidavit was not signed under the pains and penalties of perjury and wasn't acknowledged with a jurat. With respect to § 35B, the affidavit did not recite either (1) that the requirements of § 35B have been complied with, or (2) that § 35B is not applicable to the foreclosed mortgage. With respect to § 35C, the affidavit did not recite that the foreclosing mortgagee is either (1) the holder of the promissory note secured by the foreclosed mortgage, or (2) the authorized agent of the holder of said promissory note.

202. The affidavit was not dated prior to the first publication date of the mortgagee's notice of foreclosure sale. :GL c. 244, §§ 35B and 35C became effective November 1, 2012. As such, no affidavit of compliance with these sections is required if first publication occurred prior to this date GL c. 244, §§ 35B and 35C apply only to certain mortgages securing 1-4 family residential property.

203. Defendants did not Comply with GL c. 244, §§ 35B and 35C they did not attest to in a single affidavit, or in separate affidavits.

204. The Defendant filed an *affidavit of sale* at the Norfolk Registry of Deeds on or about February 5th, 2019 the affidavit of sale is deficient as to **GL c. 244, §§ 35B and 35C** was not complied with therefore the foreclosure is void. Even if the affidavit of sale is not deficient Defendants affidavit fails with respect to GL c. 244, §§ 35B and 35C.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiff against Defendants for: (1) Statutory damages; (2) Actual damages equal to any unauthorized interest paid; (3) Treble damages for violations of G.L. c. 93A; (4) Attorneys' fees, litigation expenses and costs of suit; (5) Compensatory, nominal and punitive damages; (6) A declaration that Defendants may not add interest to a debt for a period prior to the date of 2005 acceleration and or Dec 2008 foreclosure demand or breach, and may not include prejudgment interest in the amount sought in a court; (7) actual and or statutory damages, and punitive

damages, attorney's fees and costs. (8) An injunction prohibiting Defendants from demanding such; (8) Such other and further relief as is appropriate. (9) Emergency restraining order for all proceedings regarding the April 9, 2019 foreclosure in any court in Massachusetts.

## COUNT V

**Massachusetts Debt Collection Regulation Act 940 CMR 7:00**

**Defendants BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda Orlans, Alison  Orlans, Jane Doe & John Doe**

205. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged here

206. The purpose of 940 CMR 7.00 is to establish standards, by defining unfair or deceptive acts or practices, for the collection of debts from persons within the Commonwealth of Massachusetts.

207. MDCRA 940 CMR 7.00 applies only to the collection of debts, as defined in 940 CMR 7.00, and no conduct which is not the collection of debts or any part thereof is affected.

208. All Defendants  actions constituted an unfair or deceptive act or practice to engage in the following practices to collect or attempt to collect a debt from plaintiff that he has   :

Defendants action with regard to the April 9, 2018 foreclosure was contrary to the MDRCA **940 CMR** which triggered a violation of the MGL 93a. such as:

Any action that cannot legally be taken or that is not intended to be taken.

705: (2) It shall constitute an unfair or deceptive act or practice for a creditor to imply the fact of a debt, orally or in writing, to persons who reside in the household of a debtor, other than the debtor.

706: **(d)** Any communication of the fact of such debt by an attorney involved in litigation in connection with such debt, or after a judgment on the debt has been entered by a court of competent jurisdiction**; (e)** Any contact required by law to be made by a creditor engaged in collection activities, including notices required prior or subsequent to repossession.

707:(6) Any representation that an existing obligation of a debtor may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges, if in fact such fees or charges may not legally be added to the existing obligation. **(8)** Any false, deceptive, or misleading representation, communication, or means in connection with the collection of any debt or to obtain information concerning a debtor. **(16)** The collection of any amount (including interest, fees, charges or expenses incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law, REGULATORY AUTHORITY 940 CMR 7.00: M.G.L. c. 93A, § 2(c).

**WHEREFORE,** Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiff against Defendants and find that all defendants actions under the **Massachusetts Debt Collection Regulation Act 940 CMR 7:00 et seq. (**MDCRA): constituted an unfair or deceptive act or practice which triggered a violation of MGL 93a.

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.
Respectfully submitted this 28th day of May 2019

Paul Jones
/s/ Paul Jones
572 Park Street
Stoughton, Ma 02072
PJ22765@gmail.com
May 28, 2019

# **VERIFICATION OF COMPLAINT AND CERTIFICATION**

## **STATE OF MASSACHUSETTS**

### **Plaintiff, Paul Jones, states as follows**

I am the Plaintiff in this civil proceeding.

I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification or law.

I believe that this civil complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in this Complaint. I have filed this complaint in good faith and solely for the purposes set forth in it. Each and every exhibit which has been attached to this complaint is true and correct copy of the original.

Except for clearly indicated redactions made by me where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Paul Jones

/s/ Paul Jones

May 28, 2019