UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

PAUL JONES

Plaintiff                                     Civil Action No. 1:19-cv-11076-FDS

V.

DOLAN CONNLY P.C et al

## PLAINTIFF'S OPPOSITION TO MCCABE DOLAN CONNLY P.C.'S MOTION TO DISMISS

1. And now comes the Plaintiff, and files this Brief in Opposition to Dolan Connly P.C.'s Motion to Dismiss, Plaintiff brought this lawsuit against Dolan Connly P.C (Dolan) law firm, James W. Dolan (James), Gregory A. Connly (Gregory), Barbara D. Connly (Barbara), David A Marsocci (David), partners and attorneys hereafter defendants, were involved in plaintiff's Post foreclosure communications, Letters & eviction proceeding in the Stoughton District Court (See Exhibit 1-5) which was contrary to the Federal Debt Collection Practices Act (FDCPA), Massachusetts Unfair & Deceptive Trade Practices Act (MGL 93a) and the Massachusetts Debt Collection Regulation Act 940 CMR 7:00 (MDCRA).

2. The FDCPA imposes strict liability on debt collectors for their violations." Harrington v. CACV of Colo., LLC, 508 F. Supp. 2d 128, 132 (D. Mass. 2007) (citing Picht v. Jon R. Hawks, Ltd., 236 F.3d 446, 451 (8th Cir. 2001); Foti v. NCO Fin. Sys., 424 F.Supp.2d 643, 661 (S.D.N.Y. 2006); Pettway v. Harmon Law Offices, P.C., 2005 WL 2365331 (D. Mass. 2005)). While "[d]efendants may, as an affirmative defense, claim that their violations were unintentional," they then must meet the burden of

showing that the violation was not intentional. Harrington, 508 F. Supp. 2d at 132 (citing 15 U.S.C. § 1692k(c)).

## The FDCPA's One-Year Statute of Limitations Runs Separately for Each Discrete Violation of the Act

3.  The FDCPA's requirement that private actions be brought within one year of when "the violation" occurs means what is says: A plaintiff may sue to challenge violations that occurred in the previous year. There is no exception for violations that are similar to earlier time-barred violations. The defendant's contrary interpretation is inconsistent with the statutory text, the great majority of case law, and Congress's express purpose in enacting the FDCPA

4.  The Supreme Court has said "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." Crespo v. Holder, 631 F.3d 130, 136 (4th Cir. 2011) (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)).

5.  Here, the FDCPA's statute of limitations is unambiguous that a consumer may challenge a violation that occurred in the prior year, regardless of whether that violation may be related to earlier, time-barred violations. The Act's limitations provision states that private actions "may be brought ... within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). "In interpreting the plain language of a statute, this Court should give[s] the terms their ordinary, contemporary, common meaning," absent some indication of contrary congressional intent. Crespo, 631 F.3d at 133 (quotation marks omitted). A "violation" is, of course, a "breach of the law" or "the contravention of a right or duty." BLACK'S LAW DICTIONARY (10th ed. 2014). So, the FDCPA's substantive requirements define what is a violation under the Act.

## Standard of Review

**6.** Pursuant to Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); García Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). This requirement "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the illegal conduct alleged. Twombly, 550 U.S. at 556. The Court "must assume the truth of all well plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). To do so, the Court may consider "implications from documents attached to or fairly incorporated into the complaint," "facts susceptible to judicial notice," and "concessions in plaintiff's response to the motion to dismiss." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55-56 (1st Cir. 2012) (quoting Arturet Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n. 2 (1st Cir. 2005)); see Pare v. Northborough Capital Partners, LLC, 133 F. Supp. 3d 334, 336 (D. Mass. 2015) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)).

## ARGUMENT

7. Plaintiff Amended Complaint stated he was consumer and the debt arose out of transactions in which the money, property, insurance, or services that are the subject of the transaction were primarily for personal, family, or household purposes, Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. § 1692 and Defendants are debt collectors within the meaning of FDCPA, 15 U.S.C. §1692 (See Am Compl. lines 132, 161, 162).

8.  Defendants sent or caused to be sent to plaintiff several communications and or letters with each of the defendant's names on the top left on April 24, 2018, May 2, 2018, March 24, 2019 and filed a Summary Process on April 29, 2019 (See Exhibit 1-5).

9.  Defendants communication and or letters dated April 24, 2018, May 2, 2018 are out side the statue of limitation for the FDCPA, but the defendants were sent a validation request from plaintiff on April 26, 2018 the March 24, 2019 and Summary Process (See Exhibit 5) on April 29, 2019 violated the FDCPA, MGL 93a and MDCRA because the defendants never validated plaintiff's debt.

10. Plaintiff put defendants on notice after their first communication and or letter to plaintiff, I informed defendants that their actions were contrary to the FDCPA, MGL 93a and other Federal & State statues.

11. The first communications and or letter was (1st) an initial Mass. Gen. L. c. 186A Notice with a 3rd paged attached titled *Change in ownership Questionnaire* dated April 24, 2018 with each of the defendant's names on the top left, (*See Exhibit 1 or DKT No. 7 Am. Compl. Page 106, 107 & 108*).

12. This communication was contrary to the MGL 93a and MDCRA because of the attached 3rd page titled *Change in ownership Questionnaire had deceptive language as detailed in this opposition to defendants' motion to dismiss, any violation of the MDCRA triggers a violation of the MGL 93a.*

13. Mass. Gen. L. c. 186A seeks to ensure that tenants in foreclosed residential properties be informed of *the name, address, and telephone number of the foreclosing owner* and the building manager, and the address to which rent should be sent, no later than thirty days after the foreclosure. G. L. c. 186A, § 3. This notice must be provided in three ways: by posting in a prominent location in the building, by first class mail to each unit, and by sliding the information under the door of each unit. Id. FEDERAL NATIONAL MORTGAGE ASSOCIATION vs. JOSE NUNEZ 460 Mass. 511.

14. Defendants attached a 3rd page titled *Change in ownership Questionnaire is not a requirement and is nowhere to be found in* Mass. Gen. L. c. 186A 1-6 statue this caused the Mass. Gen. L. c. 186A notice to be contrary to the FDCPA, Defendants created this questionnaire which is a collection letter, it is contrary to the FDCPA because it attempts to collect any debt or to obtain information concerning a consumer within the meaning of §1692e (10) using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer , by the failure to disclose in the initial written communication with the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector 15 U.S.C. §1692e (11), defendants also did not send plaintiff within five days after the initial communication with Plaintiff in connection with the collection of any debt, a written notice containing a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor, defendants never did, this was a clear violation of 15 U. S.C. § 1692g of the FDCPA.

15. The defendant admits that they never validated the debt after they received plaintiff request for validation under the FDCPA in defendants motion to dismiss, they stated "it is clear *that the only three* (3) communications or letters that were sent by Dolan Connly, P.C., *other than the summary*

*process complaint itself*, were (1) an initial Mass. Gen. L. c. 186A Notice dated April 24, 2018, (2) a 93A Response letter dated May 2, 2018 and (#3) a 72 Hour Notice to Quit dated March 29, 2019". On April 26, 2019 plaintiff sent attorney Gregory A. Connly (Registered Agent and partner of Dolan Connly P.C) a request for validations and plaintiff attached a Creditors Disclosure Statement, my request was not validated nor was plaintiffs Creditors Disclosure Statement filled out and return to me by the plaintiff as defendants continued to send letters and communications without validating the debt. (See Exhibit 2 *DKT No. 7 Am. Compl.* Pg. 136-142)

16. A collection letter is confusing if, after reading it, the unsophisticated consumer would be left unsure of her right to dispute the debt and request information concerning the original creditor. See Taylor, 103 F.3d at 1236, Pollard v. Law Office of Mandy L. Spaulding (1st Circuit). Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996), With this holding in place, the court turned to the question of whether the collection letter sent by the defendants, when viewed through the eyes of the unsophisticated consumer, overshadows or is inconsistent with the validation notice. We note at the outset that, in the section 1692g milieu, courts do not always distinguish between violations based on the overshadowing of a validation notice and violations based on inconsistencies. Overshadowing is a phenomenon that can take diverse forms. Typically, however, overshadowing is based upon the visual characteristics of a collection letter, such as when a letter demands payment in large, attention-grabbing type and relegates the validation notice to fine or otherwise hard-to-read print. See McMurray, 687 F.3d at 671; Bartlett v. Heibl, 128 F.3d 497, 500 (7th Cir. 1997). Inconsistencies, too, can occur in various shapes and sizes. They may be either literal or apparent. See, e.g., Peter v. GC Servs. L.P., 310 F.3d 344, 349 (5th Cir. 2002); Bartlett, 128 F.3d at 500-01, ROBBIE POLLARD v. LAW OFFICE OF MANDY L. SPAULDING (1st Circuit).

17. Defendants *NOTICE UNDER MASSACHUSETTS GENERAL LAWS CHAPTER 186 A contrary to the MGL 93a and the MDCRA because* unfair & deceptive language was in it, this made the document contrary to the above laws , the unfair & deceptive language the defendants stated in the letter was "BNY became the new owners of the property located at 572 Park Street, Stoughton, Ma 02072 on April 9, 2018 when they conducted the 2nd foreclosure" this was not true,

18. Defendants action with regard to the April 9, 2018 foreclosure communications and letters sent to plaintiff was contrary to the MDCRA 940 CMR which triggered a violation of the MGL 93a. The April24,2018 and May 2, 2018 was contrary to the MDCRA & MGL 93a because defendants never validated plaintiff's debt (See Exhibits1-2-3) these acts as stated in plaintiffs Amended Complaint were such as:

   1. Any action that cannot legally be taken or that is not intended to be taken. 705: (2) It shall constitute an unfair or deceptive act or practice for a creditor to imply the fact of a debt, orally or in writing, to persons who reside in the household of a debtor, other than the debtor. 706: (d) Any communication of the fact of such debt by an attorney involved in litigation in connection with such debt, or after a judgment on the debt has been entered by a court of competent jurisdiction; (e) Any contact required by law to be made by a creditor engaged in collection activities, including notices required prior or

   2. 707:(6) Any representation that an existing obligation of a debtor may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges, if in fact such fees or charges may not legally be added to the existing obligation. (8) Any false, deceptive, or misleading representation, communication, or means in connection with the collection of any debt or to obtain information concerning a debtor. (16) The collection of any amount (including interest, fees, charges or expenses incidental to the principal obligation) unless such amount is

expressly authorized by the agreement creating the debt or permitted by law, REGULATORY AUTHORITY 940 CMR 7.00: M.G.L. c. 93A, § 2(c).

19. Defendants communication and or letters on March 29, 2019 and the Summary Process (See Exhibit 5) filed on April 29, 2019 triggered a violated Section 1692d because there was no change in ownership since the first foreclosure on or about Dec 2007 by BNY, The records reflect that BNY was the owner of record since Dec 2007 according to the Norfolk Registry of Deeds (See Exhibit 3) therefore nothing the statement defendants added in the April2 4, 2018 *Change in ownership Questionnaire that* "BNY became the new owners of the property located at 572 Park Street, Stoughton, Ma 02072 on April 9, 2018" was unfair & deceptive which triggered the violation of the MDCRA & the MGL 93a..

20. Defendants also violated 15 U.S.C. §1692f(6) taken or threatened to unlawfully repossess or disable the (Plaintiffs)consumer's property, Defendants violated § 1692 e(l0) Any false representation or deceptive means to collect a debt (*Change in ownership Questionnaire* verbiage)or obtain information about a consumer, Defendants also violated § 1692 Brought a legal action that they are not authorized to bring according to the Registry of Deed ownership documents (See Exhibit4) .

21. After plaintiff sent his validation notice and defendants failed to validate the debt, defendants sent another communication and or letter titled 72 Hour to quit and Vacate Premises on March 29, 2019 and a Summary Eviction Process dated April 29, 2019, defendant triggered the violations of the FDCPA, MDCRA and MGL 93a because they never validated the debt and other sections of the FDCPA, MDCRA and MGL 93a.

22. Plaintiff clearly states in his Amended complaint how defendants' actions were contrary to the FDCPA to name a few from the Am Complaint such as:

(1)      (Line 34 Am Compl.) used "false, deceptive, misleading, unfair, and unconscionable practices in connection with their attempt to collect an alleged but nonexistent defaulted debt from Plaintiff.

(2)      (Line 138 Am. Compl) All the defendant's communications to the plaintiff was contrary to the FDCPA in at least 8 ways, as plaintiff did not have a mortgage and or note since the first foreclosure on or about December 2008.

(3)      (Line 139 Am. Compl) The FDCPA requires a "notice of debt" to contain certain information for the debtor and be mailed to the debtor within five days of first contacting the debtor about the debt. This lawsuit maintains all the defendants missed that five-day deadline in its communications with the plaintiff

(4)      (Line 142 Am. Compl) On April 24, 2018 Defendants BNY Dolan, James, Gregory, Barbara, Kathleen, David, Cindy also mailed a Change in Ownership Occupant Questionnaire - Foreclosure document, this document stated that on April 9, 2018 BNY and its agent defendant *SPS foreclosed and BNY became the new owners of the property located at 572 Park Street, Stoughton, Ma 02072,* on the back of the letter it stated were to send money, this document was Unfair & Deceptive and was contrary of the FDCP A, MGL 93A and other Federal & State laws on its face.

(5)      (Line 145 Am. Compl) These Notices that defendants Dolan, James, Gregory, Barbara, Kathleen, David, Cindy filed or caused to be filed was contrary to the FDCP A, MDCRA, MGL 93a and other state laws as the defendants had no right to do so.

(6)      (Line 146 Am. Compl) Defendants BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda Orlans, Alison Orlans knew or should have known that there was no legal entitlement to foreclose or send any related notices regarding the April 9, 2018

foreclosure, this action was and is prohibited by the FDCPA, MGL 93a, Massachusetts Debt Collection Regulation Act and other Federal & State laws.

(7)    (Line 154 Am. Compl) The plaintiff sent all defendants BNY, SPS, Dolan, James, Gregory Barbara, Kathleen, David, Cindy Silva, Orlans, Linda Orlans, Alison Orlans debt validation notices and they all failed to validate the debt and continued collection activities which is contrary to the FDCP A, MGL 93, MDCRA and other Federal & State Laws.

(8)    (Line 161-162 Am. Compl) Plaintiff stated Plaintiff stated Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. §1692 and defendants are debt collectors within the meaning of FDCPA, 15 U.S.C. §1692

(9)    (Lines 157-208 Am. Compl) Plaintiff detailed all the violations that defendants' communications and or letter violated throughout the complaint and in all the counts for violations of the FDCPA, MGL 93a and MDCRA.

(10)   (Lines 194 Am. Compl) Plaintiff pointed out that the Defendants employed unfair or deceptive acts to collect the Debt, in violation of M.G.L. c. 93A § 2.

(11)   Please see plaintiffs count in his Amended complaint.


23.   Plaintiff points the court to his Amended complaint that it explains why defendant's communication, letters and Summary process was contrary to the FDCPA, MGL 93a and the MDCRA.

24.   Plaintiff filed a motion to dismiss and defendants filed a motion for use and occupancy and attorney fees against plaintiff on or about June 1, 2019, the Stoughton district court denied plaintiffs motion to dismiss and denied defendants request for use and occupancy motion that also asked for an award of attorney's fees after oral arguments.

25. Plaintiff submitted to the Stoughton district court, Transcripts of defendants 2007 and 2008 Summary
    processes for eviction against plaintiff, which BNY own counsel agreed that all the summary
    processes should be dismissed with prejudice and they were, and the defendants brought another
    summary process after almost 12 years later, and defendants and their client BNY still has not met
    Massachusetts strict laws governing foreclosures   GL c. 244, §§ 35B and 35C, Paragraph 22 of the
    Mortgage and other Federal & State laws (See Exhibit 4 Transcripts)

26. Defendant ignores all of plaintiff specifics which states what actual actions Dolan Connly,
    P.C. and its employees (defendants) supposedly undertook which were contrary to the FDCPA, MGL
    93, MDCRA, defendants fail to realize that the 3 letters clearly had all defendants' names written on
    it most consumer like plaintiff would believe that the letters are from all the defendants.

27. Defendants also states "Plaintiff was previously notified of this fact and it is unclear whether he intends
    to amend his Complaint for a third time" for the record plaintiff has only amended his complaint one
    time.

28. Defendants also state "Plaintiff never states how or why the summary process proceeding is contrary
    to FDCPA or any other federal or state laws".  Plaintiff clearly states in line 147 that "The defendants
    Dolan, Orlans, Linda Orlans, Alison Orlans, Dolan, James, Gregory, Barbara, Kathleen, David, Cindy,
    Jane Doe or John Doe had no right to foreclose on the property or proceed with any attempt to evict
    or disable the above mention property, *as there was not*

*a mortgage or note on the home (In plaintiffs name) due to the previous foreclosure that occurred on*
*approximately Feb of 2008 (which should have stated December 2007) and the 2005 acceleration of*
*the mortgage.*

29. Plaintiffs allege in his Amended complaint that defendants violated section §1692g Defendants
    violated 15 U.S.C. §1692g by, within five days after the initial communication with Plaintiff  in

connection with the collection of any debt, failing to send Plaintiff a written notice containing a

statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity

of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; a

statement that if the consumer notifies the debt collector in writing within the thirty-day period that

the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a

copy of a judgment against the consumer and a copy of such verification or judgment will be mailed

to the consumer by the debt collector; and a statement that, upon the consumer's written request

within the thirty-day period, the debt collector will provide the consumer with the name and address

of the original creditor, if different from the current creditor (See Am Compl).

30. Defendants violated §1692g when they never validated the debt and continued contact consumer

   with communications and letters and a Summary Process.

31. To verify or validate the debt a provision must be interpreted to provide the consumer with notice of

   how and when the debt was originally incurred or other sufficient notice from which the consumer

   could sufficiently dispute the payment obligation." *Haddad*, 2014 U.S. App. LEXIS 13498 at * 21.

   The law firm failed this test because it did not provide information about the nature of the debt that

   plaintiff disputed and instead continued its collection efforts.

The failure to explain the and validate the debt led the plaintiff to conclude that the documents the law

   firm provided were insufficient to allow the plaintiff to dispute the debt. See *Haddad*, 2014 U.S.

   App. LEXIS 13498 at * 21.

32. In *Haddad*, 2014 U.S. App. In the court announcing this new standard for verification, the Sixth

   Circuit reviewed other Circuit's rulings on the same issue and found that those courts had interpreted

   "verification" as requiring "nothing more than the debt collector confirming in writing that the

amount being demanded is what the creditor is claiming is owed" and that "the debt collector is not required to keep detailed files of the alleged debt." *Id.* at \* 13-19 (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999); *see also, Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162 (9th Cir. 2006)). However, the Court was quick to point out that in each of those cases and in others the debt collectors had gone beyond the standard verification requirement by sending itemized statements to the debtors which provided sufficient information to allow the consumer to dispute the debt. *Id.* at \* 19.

33. The Sixth Circuit's verification standard appears similar to that of the 8th Circuit. It seems to have adopted the *Dunham* Court's interpretation of "verification" in which it did not attach a specific action to "verification" (such as confirming the amount owed) but ruled that "the verification requirement was satisfied where the debtor could sufficiently dispute the payment obligation." *Id.* at \* 19-20. The Sixth Circuit's adoption of this standard appears to be driven by its conclusion that what is sufficient for verification "depends on the facts of a particular situation..." *Id.* at \*19.

34. The Sixth Circuit offered guidance about what it believes would suffice. For example, in those cases where the debtor appears to acknowledge the account belongs to him but disputes owing the balance or any portion of it, the Sixth Circuit stated that "an itemized accounting detailing the transaction in an account that has led to the debt is often the best means of accomplishing that objective." *Id.* at \* 19.

35. Then the Sixth Circuit, stating that it believed it was making the debt collector's job easier, said that the information used to verify a debt "does not have to be extensive. It should provide the date and nature of the transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assessed on certain date." *Id.* at \* 19.

36. Plaintiffs allege that Defendants violated section §1692f Defendants violated 15 U.S.C. §1692f (6)

    taken or threatened to unlawfully repossess or disable the consumer's property, this was done when

    defendants filed another summary process in the Stoughton district court after 3 others were

    dismissed with prejudice in 2008 almost 12 years ago (See exhibit 4 Transcript)

37. With regards to 15 U.S.C. §§ 1692e, although Defendants did not itself foreclose on the real property

    at issue, it made misleading representations on April 24, 2018 when they sent plaintiff

    correspondence titled *NOTICE UNDER MASSACHUSETTS GENERAL LAWS CHAPTER 186 A &*

    *Change in ownership Questionnaire (See DKT No. 7 Am. Compl. Page 106 of 156)* about the new

    owners of the property that led Plaintiff to believe that the Countrywide acceleration of mortgage

    from 2005 was bogus and the Bank of New York Foreclosure in December of 2007 (See Exhibit to

    Amended complaint) was conducted by another entity other than Bank of New York.

38. Although those representations were motivated primarily by a desire to collect a debt, they were

    nonetheless misleading and made in connection with the collection of a debt given that defendants

    inaccurately represented that there was a change in ownership of the property at issue, "Dear

    occupant The Bank of New York Mellon r/k/a/ The Bank of New York as Trustees for CWABS Inc.

    Assets Back Certificates , series 2004-7 , c/c Select Portfolio ("Owners")   Acquired ownership of

    the below property via a foreclosure sale held on April 9, 2018 and Select Portfolio is the agent of

    the new owner of the property".

39. Plaintiff points the court to the registry of deeds records, as of December 2007 The Bank of New

    York Mellon r/k/a/ The Bank of New York as Trustees for CWABS Inc. Assets Back Certificates

    series 2004-7 claimed to be the owner

40. Plaintiffs have therefore made out a plausible violation of the FDCPA 15 U.S.C. § 1692, MDCRA and the MGL 93a.

41. Plaintiff put defendants on notice that their actions were contrary to the FDCPA, MGL 93a and other Federal & State statues by sending multiples notices, demand letter and exhibits to clearly point out that there was no debt due from plaintiff, because an acceleration and foreclosure had already taken place in 2005 & approximately Dec of 2007 (See line 69 Am Compl.).

42. All Defendants acted as agent for BNY and SPS, therefore when any defendants sent communications & letters and took any court actions against plaintiff it triggered actions that were contrary to the FDCPA, MGL 93a, MDCRA & other violations of Federal & State Laws (See line 92 AC).

43. Plaintiff on April 26, 2018 requested defendants cease communications about the allegedly outstanding debt and validate it, Instead Defendants continued to pursue the debt, by sending more communication and or letters and filing a Forth summary process in the Stoughton District court where 3 were dismissed with prejudice in 2008 Docket numbers 2008SU17, 2008SU118 and 2008SU48 (See Exhibit 2008 Transcript Stoughton court).

## CONCLUSION

WHEREFORE, for the above-stated reasons, Plaintiff respectfully requests that this Honorable Court deny defendants Motion to Dismiss.

Respectfully Submitted
/s/ Paul Jones

Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

David A. Marsocci
50 Redfield Street, Suite 202
Boston, MA 02122
(617) 265-3100
dmarsocci@dolanconnly.com

## CERTIFICATE OF SERVICE

I Paul Jones plaintiff Certify that I have mailed a copy to all defendants a true and correct
copy of the foregoing has been furnished via certified mail to all defendants to this action
On this 13th day of July 2019.

Respectfully Submitted
*/s/ Paul Jones*
Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

David A. Marsocci
50 Redfield Street, Suite 202

Boston, MA 02122

(617) 265-3100

dmarsocci@dolanconnly.com

# VERIFICATION OF COMPLAINT AND CERTIFICATION

## STATE OF MASSACHUSETTS

### Plaintiff, Paul Jones, states as follows

I am the Plaintiff in this civil proceeding.

I believe that this opposition to defendants' motion to dismiss (12 B

6) is well grounded in fact and warranted by existing

law or by a good faith argument for the extension, modification or law.

I believe that this motion is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in this Complaint. I have filed this complaint in good faith and solely for the purposes set forth in it. Each and every exhibit which has been attached to this complaint is true and correct copy of the original.

Except for clearly indicated redactions made by me where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Paul Jones

/s/ Paul Jones