FILED
IN CLERKS OFFICE

2019 AUG 28 PM 4: 17

U.S. DISTRICT COURT
DISTRICT OF MASS.

PAUL JONES

Plaintiff                                              Civil Action No. 1:19-cv-11076-FDS

    V.

DOLAN CONNLY P.C et al

# PLAINTIFF OPOSITION TO DEFENDANTS BANK OF NEW YORK

## & SPS MOTION TO DISMISS

And now comes the Plaintiff, Paul Jones (hereinafter "Plaintiff"), and files this Brief in Opposition

to The Bank of New York Mellon, as Trustee ("BNY") & Select Portfolio Servicing, Inc. ("SPS")

Motion to Dismiss.

## INTRODUCTION

Both the right to proceed pro se and liberal pleading standards reflect the modern civil legal

system's emphasis on protecting access to courts. (See Phillips v. Cnty. of Allegheny, 515 F.3d

224, 230 (3d Cir. 2008). Self-representation has firm roots in the notion that all individuals, no

matter their status or wealth, are entitled to air grievances for which they may be entitled to

relief. (See Swank, supra note 1, at 1546 (discussing the importance of self-representation to the

fundamental precept of equality before the law). Access, then, must not be contingent upon

retaining counsel, lest the entitlement become a mere privilege denied to certain segments of

society. Similarly, because pleading is the gateway by which litigants access federal courts, the

drafters of the Federal Rules of Civil Procedure purposefully eschewed strict sufficiency

standards. See Proceedings of the Institute on Federal Rules (1938) (statement of Edgar Tolman), reprinted in RULES OF CIVIL PROCEDURE FOR THE DISTRICT COURTS OF THE UNITED STATES 301-13 (William W. Dawson ed., 1938). In their place, the drafters instituted a regime in which a complaint quite easily entitled its author to discovery in order to prevent dismissal of cases before litigants have had an adequate opportunity to demonstrate their merit. See Mark Herrmann, James M. Beck & Stephen B. Burbank, Debate, Plausible Denial: 158 U. PA. L. REV. PENNUMBRA 141, 148 (2009),

http://pennumbra.com/debates/pdfs/PlausibleDenial.pdf (Burbank, Rebuttal) (asserting that the drafters of the Federal Rules objected to a technical pleading regime because it would "too often cut off adjudication on the merits").

However, recognizing that trans substantive pleading standards do not sufficiently account for the capability differential between represented and unrepresented litigants, the Supreme Court fashioned a rule of special solicitude for pro se pleadings. Accordingly, "pro se complaint[s], 'however in artfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam)). Discovery is needed in this case, and, plaintiff notes in this opposition that the defendants possess some documents plaintiff would need for this his case.

## Standard of Review

At this stage of the litigation, BNY & SPS must demonstrate that, even if the truth of Plaintiffs (plausible) allegations are granted, Plaintiffs has still not stated a claim for relief. That is, even if all facts pled are true, Plaintiffs has not pled enough to satisfy the elements of the claims he is advancing. BNY & SPS, citing Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007), has attempted to expand BNY & SPS burden to include not only the pleading of facts sufficient to support a claim, but facts sufficient to demonstrate its truth.

While Iqbal and Twombly make it clear that a statement of legal conclusions or "formulaic recitation of the elements" dressed up to look like factual assertions are insufficient to state a cause of action, neither case requires detailed factual pleadings. Rather, these cases establish a regime in which:

[Legal] conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). This sets up a two-track enquiry by the court. First, the court must determine whether a pleading asserts a fact, or merely dresses a legal conclusion in a factual form. Where factual matters are well pled, the court must assume that they are true, and ask only if they plausibly give rise to an entitlement to relief. Where a legal conclusion masquerades as a factual pleading, however, the pleading is not entitled to an assumption of truth, and the Court must determine whether there are further well pled facts that plausibly support a claim for relief. What Twombly and Iqbal do not require is any finding that well pled facts, that is, pleadings making purely factual assertions, require further factual support.

Because of Plaintiffs pro se status, the court should construe his pleadings liberally. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75-76 (1st Cir. 2014) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)).

A district court's dismissal for failure to state a claim is reviewed de novo, Galvin v. U.S. Bank, N.A., 852 F.3d 146, 153 (1st Cir. 2017), To set the factual stage for this case, plaintiff rely on the allegations set forth in his Verified Amended Complaint, the documents attached to the complaint, and relevant public records. *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). *See also Medina-Velázquez v. Hernández-Gregorat,* 767 F.3d 103, 108 (1st Cir.2014), the court should take all factual assertions in plaintiffs Verified Amended Complaint as true and drawing all reasonable inferences in the plaintiffs' favor; To survive a motion to dismiss, the claim must be "plausible." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The court focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in plaintiff Amended Verified complaint." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011).

A court's goal in reviewing a Rule 12(b)(6) motion is to determine whether the factual allegations in the plaintiff's complaint set forth "a plausible claim upon which relief may be granted." *Woods v. Wells Fargo Bank, N.A.,* 733 F.3d 349, 353 (1st Cir.2013).

The court must take all of the pleaded factual allegations in the complaint as true. *Watterson,* 987 F.2d at 3. Barring "narrow exceptions," courts tasked with this feat usually consider only the complaint, documents attached to it, and documents expressly incorporated into it. *Id.* Thus, a primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant reaching the (oftentimes) laborious and expensive discovery process because, based on the factual scenario on which the case rests, the plaintiff could never win. In short, plaintiffs are not required to submit evidence to defeat a Rule 12(b)(6) motion but need only sufficiently allege in their complaint a plausible claim, the district court's inquiry should start and end with the pleadings (See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75-76 (1st Cir. 2014). Plaintiffs verified amended

complaint and verified opposition should be treated as an affidavit Pupecki v. James Madison Corp., 376 Mass. 212 (1978).

## **LAW AND ARGUMENT**

Defendants in their Motion to dismiss introduction states "*Jones does not establish any unlawful conduct by SPS or the Trustee, or any viable challenge to the April 9, 2018 foreclosure to stave off eviction*", The Stoughton district court and defendant BNY actions not plaintiff has staved off the eviction since March 13, 2008, defendants BNY has brought several complaints for Summary process evictions against plaintiff in the Stoughton District court where the property is located and all were dismissed with prejudice by judge Karen White on March 13, 2008 for failure to follow strict Massachusetts foreclosure laws see Exhibit 1.

Defendants BNY, SPS and their attorneys has attempted to demonstrate plaintiff purported failure by arguing in their *Factual allegation and background* (Page 2 paragraph 1) "The 2007 foreclosure was subsequently rescinded. In 2018, the Trustee, through legal counsel, again commenced foreclosure. On April 9, 2018, the foreclosure sale of the property was conducted and completed with notice to Jones".

Defendants BNK & SPS fails to put forth *any* evidence that the 2007 foreclosure was rescinded BNY & SPS could have easily put forth the form of notice of rescission they have not because one does not exist.

Defendants BNY & SPS are in the best position to prove that the foreclosure was rescinded.

> **Plaintiffs Have Alleged Discrete Violations of the FDCPA Taking Place Within the One-Year Limitations Period AGAINST BNY & SPS,**

Defendants BNY & SPS states in their motion to dismiss "The FDCPA claims asserted by Jones in Count I are barred by the applicable one-year statute of limitations".

Plaintiff pleaded in his Verified Amended Complaint that:

1. defendants BNY & SPS sent or caused to be sent bills for a mortgage that had been foreclosed since on or about December 2007 within one year of plaintiff filing his May 9, 2019 lawsuit.

2. Defendants sent mortgage statements (bills) for plaintiff to his job at 79 Thompson Street, Springfield, Ma 01109 and to 24 Deckard Street Dorchester, Ma 02121 addressed to his spouse from 2015 to September 19, 2019.

3. Filed or caused to be filed a second foreclosure in the Norfolk Registry of deeds when there was no mortgage since 2008.

4. Defendants misrepresented the character amount of the debt his owed as of September 19, 2019 ($630,935.82).

5. attempting to collect an alleged but nonexistent debt from plaintiff September 19, 2019 and when a Summary Process Eviction was filed with the Stoughton District court after they have dismissed Three previous Summary Process eviction filed by the defendant BNY on April 29, 2019, Plaintiff plead in his Verified Amended Complaint "when any defendants took any court actions against plaintiff it triggered actions that were contrary to the FDCPA, MGL 93a, MDCRA & other violations of Federal & State Laws".

6. From on or about March 2015 until February 1, 2019 Defendants BNY, SPS sent or caused to be sent to plaintiff, plaintiffs spouse and plaintiffs job (573 Park Street, Stoughton, Ma, 24 Deckard Street Dorchester, Ma and 79 Thompson St, Springfield, Ma ) by U.S. Mail a letters informing him that defendants had been retained by BNY to foreclose on his residence that he occupied at 572 Park Street Stoughton, Ma 02072.

7. On or about August 31, 2018 Dolan, James, Gregory, Cindy , Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe, John Doe, SPS sent or caused to be sent plaintiff and people other than the plaintiff an unsigned "notice of Service Members Civil Relief Act (50 USC App. 501-596)(SCRA) to plaintiffs home, Job and mothers home, Orlans P.C knew from corresponding with plaintiff that plaintiff receives all his correspondence at his residence the subject property.

8. On or about March 29, 2019 BNY, Dolan, James, Gregory, Barbara, Kathleen, David, Cindy mailed filed or caused to be mailed a notice to quit to plaintiff.

9. Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. §1692

10. Defendants are debt collectors within the meaning of FDCPA, 15 U.S.C. §1692

11.Defendants violated the FDCPA, Defendants violations include, but are not limited to, the following: 15 U.S.C. §1692d, §1692e(2), §1692e(6), §1692e(8), §1692e (10), §1692e (11), §1692e (14), §1692f (1), §1692f (6), §1692g, § 1692 b(1) and other FDCPA provisions.

All the above defendants' actions are contrary to the FDCPA as well as the MGL 93a and the Massachusetts Debt Collection Regulation Act.

Some years ago, the First Circuit Court of Appeals noted that a violation of the FDCPA is a per se violation of Chapter 93A. French v. Corporate Receivables, Inc., 489 F.3d 402, 403 n. 1 (1st Cir.2007). And before that, they stated that a violation of a federal consumer protection statute "constitutes a per se violation of Chapter 93A, § 2(a)." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 176 (1st Cir.2004).

plaintiff filing his Amended Complaint on May 9, 2019 and his Amended Complaint on May 19, 2019 all counts in plaintiff complaint was timely including the Federal Debt Collection Practices Act (FDCPA), MGL 93a and Massachusetts Debt Collection Regulation Act limitations period.

The FDCPA's statute of limitations provides that an action to enforce liability under the Act may be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). "[T]he vast majority of federal cases that have considered the issue"—including four courts of appeals—have concluded that this one-year period runs separately for each discrete violation of the Act. Solomon v. HSBC Mortg. Corp., 395 F. App'x 494, 497 n.3 (10th Cir. 2010). As a result, a plaintiff is not time-barred from challenging violations that occurred less than one year before he or she filed suit even if the defendant may have committed other, similar violations that are outside the limitations period.

The Bureau agrees with the vast majority of federal courts. The reading they have adopted follows from the plain text of the FDCPA, which requires plaintiffs to file suit within one year of when "the violation" occurs, not of when the "first similar violation" occurs. It is also consistent with how courts typically apply limitations provisions in other statutes, and with the express purpose of the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). That purpose would be frustrated by a rule that allowed debt collectors to continue engaging in abusive practices with impunity, so long as consumers did not sue within one year of the debt collector's initial violation. Here, the conduct alleged in Plaintiffs' complaint would, if proved, constitute discrete violations of the FDCPA. It is a "violation" of the Act to communicate about a debt with a consumer who has requested in writing that such communications cease, or to make a misleading representation or use an unfair means in attempting to collect a debt. Indeed, Courts have held that "[a] separate violation [of the FDCPA] occurs every time a prohibited threat or misrepresentation is made … ." United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 141 (4th Cir. 1996). Because these discrete violations are alleged to have occurred just months before Plaintiffs filed suit, the claims challenging those violations are not barred by the one-year statute of limitations.

The First Circuit court of appeals has held that a Violation of the FDCPA is a *Per Se* Violation of the Massachusetts Consumer Protection Statutes, In reviewing the trial court's decision, the First Circuit offered a lengthy and thorough discussion of *per se* Chapter 93A liability *McDermott v. Marcus, Errico, Emmer & Brooks, P.C* No. 13–2181

## The FDCPA's One-Year Statute of Limitations Runs Separately for Each Discrete
## Violation of the Act

The FDCPA's requirement that private actions be brought within one year of when "the violation" occurs means what is says: A plaintiff may sue to challenge violations that occurred in the previous year. There is no exception for violations that are similar to earlier time-barred violations. The defendant's contrary interpretation is inconsistent with the statutory text, the great majority of case law, and Congress's express purpose in enacting the FDCPA.

1. Statutory text. The Supreme Court has said "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." Crespo v. Holder, 631 F.3d 130, 136 (4th Cir. 2011) (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)). Here, the FDCPA's statute of limitations is unambiguous that a consumer may challenge a violation that occurred in the prior year, regardless of whether that violation may be related to earlier, time-barred violations

The Act's limitations provision states that private actions "may be brought ... within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). "In interpreting the plain language of a statute, [this Court] give[s] the terms their ordinary, contemporary, common meaning," absent some indication of contrary congressional intent. Crespo, 631 F.3d at 133 (quotation marks omitted). A "violation" is, of course, a "breach of the law" or "the contravention of a right or duty." BLACK'S LAW DICTIONARY (10th ed. 2014). So, the FDCPA's substantive requirements define what is a violation under the Act.

Those provisions prohibit a debt collector from using "any" deceptive or misleading representation and all "unfair or unconscionable means" in connection with collecting a debt. 15 U.S.C. §§ 1692e, 1692f. They further clarify that it "is a violation" of those provisions to misrepresent the "character, amount, or legal status" of a debt or to unfairly seek to collect amounts not authorized by law or the underlying agreement. Id. §§ 1692e(2)(A), 1692f(1).

The Act also generally requires a debt collector to "cease further communications" about a debt with a consumer who has notified the debt collector in writing that he or she refuses to pay or wishes the debt collector to cease such communications. Id. § 1692c(c). Under the plain text of the Act, a consumer may sue to challenge a debt collector's violations of these provisions "within one year from the date on which the violation occurs." Nothing in the Act suggests instead that consumers must file suit within one year of when a first violation occurs— even a violation they do not seek to challenge in court. The defendants BNY & SPS contrary reading finds no basis in the words of the statute.

Case law. "[T]he vast majority of federal cases that have considered the issue" have agreed that the FDCPA's statute of limitations runs separately for each discrete violation of the Act. Solomon v. HSBC Mortg. Corp., 395 F. App'x 494, 497 n.3 (10th Cir. 2010). That includes all four of this Court's sister circuits to have faced the question.

# PLAINTIFF HAS PLEAD A VIABLE CLAIM UNDER MORTGAGE POWER OF SALE

## FAILURE TO COMPLY WITH PARAGRAPH 22 OF THE MORTGAGE

Defendants BNY and SPS state in their Motion to Dismiss " Jones Fails to State a Claim to Void the 2018 Foreclosure, Paragraph 22 of the First Mortgage provides, in relevant part, *that Lender*

***shall give notice to Borrower*** prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument, The language of paragraph 22 is clear and unequivocal as to who must give the required notice of default to the borrower: "Lender" must do so (See Paiva v Bank of New York Case 1:14-cv-14531-ADB).

This Court should agree with Plaintiff, that if plaintiff was the mortgagor of record after the December 2007 foreclosure, which he was not the defendant SPS notice of default to plaintiff still did not strictly comply with paragraph 22 of the mortgage, as required under the statutory power of sale and under the Massachusetts Supreme Judicial Court's ("SJC") case law. See G.L. c. 183, § 21 (requiring a foreclosing bank to "comply with the terms of the mortgage"); U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) (the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to); see also Pinti v. Emigrant Mortgage Company, Inc., 33 N.E.3d 1213, 1226 (2015) (strict compliance with the notice of default required by paragraph 22 is necessary in order for a foreclosure sale to be valid). Plaintiff states for the record the he has not been the owner of record since defendant BNY foreclosed on the property on or about December 2007.

Paragraph 22 specifically states that "Lender shall give notice to Borrower . . . ." Significantly, it does not say that "Lender or the servicer of the loan shall give notice to Borrower. Thus, strictly construing paragraph 22 of the mortgage, BNY, and not SPS, had to send the notice of default to Plaintiff.

Plaintiff also alleges acts by defendant BNY & SPS grounds for voiding the foreclosure sale in his Verified Amended Complaint, it alleges that the foreclosure did not strictly comply with paragraph 22 of the mortgage because the notice of default required by that paragraph was sent by the servicer of the loan, rather than by the lender. Paiva claims that this violated the statutory power of sale

under Massachusetts law, which requires a foreclosing bank to "comply with the servicer's sending of the notice of default.

The defendants failed to realized that plaintiff was not the list mortgagor of record since December 2007, that all named mortgagors executed the mortgage at issue, confirm that the mortgage was properly acknowledged, Confirm that the mortgage terms permit the mortgagee to invoke the statutory power of sale in the event of the mortgagor's default, Confirm that an affidavit has been recorded with respect to GL c. 244, §§ 35B and 35C, With respect to § 35B, the affidavit should recite either (1) that the requirements of § 35B have been complied with, or (2) that § 35B is not applicable to the foreclosed mortgage, Confirm that a "Pinti" affidavit has been recorded, The Pinti decision is applicable to mortgage foreclosure sales of properties for which the notice of default was sent to the mortgagor after July 17, 2015. It is generally not possible to ascertain, from a review of the record title alone, when the notice of default was sent, and thus, whether the Pinti decision is applicable to the foreclosure. As a general rule of thumb, a Pinti affidavit should be recorded whenever the SCRA complaint was filed after July 17, 2015. However, in certain fact determinative circumstances, a Pinti affidavit may be deemed unnecessary, even where the SCRA complaint was filed after this date, defendants failed to do all the above, and plaintiff wasn't even the owner of record since December 2017. Plaintiff even stated a viable claim for violation OF GL c. 244, §§ 35B and 35C.

Plaintiff plead in his Amended Verified Complaint that Defendants BNY & SPS:

1. Defendants said notices do not meet the statutory requirements and are void and without legal effect. The foreclosure conducted (April 9, 2018) based on improper mailed or published legal notices is wrongful, void, and without legal affect.

2. The servicer of 572 Park Street Stoughton, Ma SPS sent a notice of default and a notice of acceleration on or about January 2018 at the time these notices were sent SPS was not the "Lender" as required by the Mortgage power of sale" clause.

3. Therefore, the notice of default & acceleration was deficient, and the power of sale was not complied with prior to the April 9, 2018 foreclosure, therefore the April 9, 2018 foreclosure is void.

4. The plaintiffs base their contention that the foreclosure sale is void because it violated § 15A the SJC has held that violations of certain statutory requirements pertaining to foreclosure sales pursuant to Massachusetts General Laws Chapter 244 would render them void.

5. As emphasized above, the foreclosure by power of sale requires that a foreclosing bank must "comply with the terms of the mortgage …. G.L. c. 183, § 21

6. If a bank fails to strictly comply with the Power of sale then the foreclosure is **void** *U.S. BANK NATIONAL* **ASSOCIATION** *.v.* **John** *SCHUMACHER 467 Mass 421,428 (2014)* therefore the resulting foreclosure sale was wrongful, without legal effect, and void.

7. BNY, acting by and through defendants SPS, Orlans, Linda Orlans, Alison Orlans, Jane Doe & John Doe serve and published statutorily mandated notices pursuant to GLM c 244, §§ 14 and 35A, asserting authority to foreclose by mortgage & note on April 9, 2018 that did not and does not exist.

## ARGUMENT CASE LAW

Under Massachusetts Laws defendants cannot foreclosure on themselves and past the damages to the plaintiff. It is well settled law that in the Commonwealth of Massachusetts Ibanez and the string of Massachusetts cases that followed such as *Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213, 1224 (Mass. 2015); U.S. Bank Nat. Ass'n v. Schumacher, 5 N.E.3d 882, 891 (Mass. 2014) (Gants, J., concurring); Eaton v. Fed. Nat. Mortg. Ass'n, 969 N.E.2d 1118, 1128 (Mass. 2012); U.S. Bank Nat. Ass'n v. Ibanez, 941 N.E.2d 40, 49 (Mass. 2011),* examined and interpreted what does and does not constitute compliance with the Massachusetts foreclosure statute (*MGL c. 244*) and what does and does not constitute an effective challenge to the validity of a foreclosure in Massachusetts.

Massachusetts law allows the holder of a mortgage to foreclose without having to file suit in court ("*Massachusetts does not require a (Mortgagee) to obtain judicial authorization to foreclose on a mortgaged property.*" *Pinto citing Ibanez*). Because Massachusetts statutory laws

allows this streamlined, non-judicial process, Massachusetts courts narrowly interpret the statute and require strict compliance with it (*"...we adhere to the familiar rule that one who sells under a power (of sale) must follow strictly its terms...". Pinto citing Ibanez)*

All the defendants failed to strictly comply with paragraph 22 in the original mortgage (Exhibit 3) to the plaintiff. Paragraph 22 states that *prior to acceleration* of the loan following a breach of the mortgage by the borrowers, the mortgage must notice the borrowers of: " (a) the default; (b) the action required to cure the default; (c) a dated, not less than (thirty) days from the date the notice is given to (the plaintiff), by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by (the mortgage)."

The second foreclosure was done *after, not prior* to when *a, b, c, d, of paragraph 22* of the mortgage had already been done, SEE Exhibit 2 *-2005* Notice of acceleration dated August 2, 2005, Servicemembers Civil Relief Act Foreclosure deed January 2, 2007*,* Notice of Mortgage sale of Real Estate January 12, 2007, Deficiency Notice After Foreclosure of Mortgage January 12, 2007, Affidavit & Legal Notice advertisement January 8, 2008, *Pinti.* On July 17, 2015 the Massachusetts SJC ruling in *Pinti,* concluded that strict compliance with the notice of default provisions in paragraph 22 of the mortgage was required as a condition of a valid foreclosure sale and that Emigrant failed to meet the strict compliance requirement. The Court opined that strict compliance with the notice requirement in the mortgage itself is necessary for a valid foreclosure and that failure to do so renders the foreclosure void.

The *Pinti* decision concluded that because the failure of a mortgage holder to strictly comply with Paragraph 22 is not a matter of public record; ascertaining whether or not clear title exists

may not be possible. As a result, the SJC gave its decision prospective effect only, holding that, *"it will apply to mortgage foreclosure sales of properties that are the subject of a mortgage containing paragraph 22 or its equivalent and for which the notice of default required by paragraph 22 is sent after the date of this opinion."* Emphasis added.

On May 11, 2017 the SJC in *FNMA v. Marroquin* (SJC-12139) acknowledged that previous rulings had not answered the question whether or not its holding should apply to any case where the issue was raised in the trial court or on appeal before July 17, 2015. In *Marroquin*, the SJC held that the *Pinti* ruling applied in all cases where the issue was timely and fairly asserted in the trial court or on appeal before July 17, 2015. The SJC in *Marroquin* concluded that the defendants timely and fairly raised the issue in the Housing Court before that date, and because the notice of default did not strictly comply with the requirements in paragraph 22 of the mortgage, the foreclosure sale was void.

A foreclosure that is void does not bar the mortgage holder from re-initiating the foreclosure process. However, it may afford the Borrower some breathing room or provide an incentive to the Lender to negotiate a solution, such as a loan modification, with its borrower.

All the defendants including Bank of New York Mellon (BNY) knew or should have known that they did not exercise good faith and reasonable diligence in conducting the April 9, 2019 foreclosure sale.

There were several irregularities in the foreclosure process that makes the sale void under Massachusetts state law.

The plaintiffs rely on several factors including Plaintiff has not held both equitable and legal title to the property since the first foreclosure sale on or about Dec 2008 See exhibit 2 first foreclosure. See Massachusetts Supreme Judicial Court's ("SJC") decision in *Bevilacqua v.*

*Rodriguez, 955 N.E.2d 884 (Mass. 2011).* Plaintiff points out that Bevilacqua establishes that, if a foreclosure transaction is void, "it is a nullity such that title never left possession of the original owner (BNY) any effort to foreclose by a party lacking 'jurisdiction (BNY) and authority' to carry out a foreclosure under [the relevant] statutes is void."

At the time all Defendants foreclosed on the above-mentioned property, BNY was the owner of record (held both equitable and legal title to the property) since on or about December 2008.

The *Bevilacqua v. Rodriguez* case correctly noted that the SJC has held that violations of certain statutory requirements pertaining to foreclosure sales pursuant to Massachusetts General Laws Chapter 244 would render them void. Id. at 11 (citing Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213, 1224 (Mass. 2015); U.S. Bank Nat. Ass'n v. Schumacher, 5 N.E.3d 882, 891 (Mass. 2014) (Gants, J., concurring); Eaton v. Fed. Nat. Mortg. Ass'n, 969 N.E.2d 1118, 1128 (Mass. 2012); U.S. Bank Nat. Ass'n v. Ibanez, 941 N.E.2d 40, 49 (Mass. 2011)). And Paiva also concluded that § 15A is one of the statutes pertaining to a foreclosure sale for which "the consequence of non-compliance is the invalidation of the foreclosure sale."

*All* the defendants cannot contest the fact that, under Bevilacqua, 955 N.E.2d at 889 n.5. & Massachusetts law Chapter 244, plaintiff must have both legal and equitable title to the property in order for the defendants to bring a second foreclosure sale See Exhibit 1.

Since on or about Dec 2008 the defendant BNY held both equitable and legal title to the property See Exhibit 2, therefore any of the defendant's arguments in support of the April 9, 2018 second foreclosure was valid, lacks any merit.

The defendants cannot advance no argument that suffices to show that the April 9, 2018 second foreclosure was valid, Plaintiff has been injured and will continue to be injured because of the April 9, 2018 foreclosure.

Although Massachusetts is a state that strives to protect consumers, see, e.g., Feeney v. Dell Inc., 454 Mass. 192, 201 (2009); In re M3 Power Razor Sys. Mktg. & Sales Practice Litig., 270 F.R.D. 45, 60 (D. Mass. 2010), Massachusetts is not alone in demanding strict compliance in cases of extrajudicial foreclosure, see, e.g., Shupe v. Nationstar Mortg. LLC, 231 F. Supp. 3d 597, 604 (E.D. Cal. 2017); Ex Parte Turner, 254 So. 3d 207, 212 (Ala. 2017); Ruiz v. 1st Fidelity Loan Servicing, LLC, 829 N.W.2d 53, 58 (Minn. 2013). See also Martin Robson, A History of the Royal Navy: The Seven Years War (2016) (Admiral Byng executed for "failure to do his utmost" in the Battle of Minorca); Voltaire, Candide, ch. 23 (1759)("pour encourager les autres").

### *Plaintiff Has Pleaded Viable claims Mass. Gen. Laws ch. 183, § 21 & 22*

In Massachusetts, upon default in the performance of a mortgage, a mortgagee may sell the mortgaged property using the statutory power of sale, so long as the mortgage itself gives the mortgagee the statutory power by reference. Mass. Gen. Laws ch. 183, § 21. Section 21 requires that, prior to conducting a foreclosure sale, a mortgagee must "first comply with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale."

Because Massachusetts does not require a mortgagee to obtain a judicial judgment approving foreclosure of a mortgaged property, see U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 49 (Mass. 2011), Massachusetts courts require mortgagees to comply strictly with two types of mortgage terms: (1) terms "directly concerned with the foreclosure sale authorized by the power of sale in the mortgage" and (2) terms "prescribing actions the mortgagee must take in connection with the foreclosure sale-- whether before or after the sale takes place." Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213, 1220–21 (Mass. 2015).

The mortgage terms for which Massachusetts courts demand strict compliance include the provisions in paragraph 22 requiring and prescribing the pre-foreclosure default notice. Pinti, 33 N.E.3d at 1221. (Countrywide the true owner in 2005 not BNY sent plaintiff a default notice in 2005 that accelerated the mortgage and caused a foreclosure, defendant BNY accrued the property in 2006 when plaintiff was in default and they ultimately foreclosed on the property on or about December 2007.) At first glance, Defendants BNY acceleration in 2007 and default notice appears to comply strictly with paragraph 22 in the April 2018 foreclosure. By its terms, paragraph 22 required BNY to send out the acceleration not defendant SPS to inform [the Plaintiff] of the right to reinstate after acceleration BNY never did the Servicer defendant SPS sent to plaintiff. Plaintiff plead in his Verified Amended Complaint that the 2018 foreclosure and sale was for a nonexistence default,

However, Massachusetts law requires that the paragraph 22 notice given to the mortgagor be accurate and not deceptive-- note the possible difference between the two concepts--and the Supreme Judicial Court has made clear that inaccuracy or deceptive character **can be fatal**. In Pinti, the mortgagee's notice said that the mortgagors "have the right to assert in any lawsuit for foreclosure and sale the nonexistence of a default." Pinti, 33 N.E.3d at 1222 (emphasis omitted). This, the Pinti court reasoned, could mislead mortgagors into thinking that they could await a lawsuit by the mortgagee before attacking the foreclosure.

Here, the notice's additional language--"you can still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place"--could mislead the Thompsons into thinking that they could wait until a few days before the sale to tender the required payment. Suppose the Thompsons had showed up with the payment three days before the sale believing that their tender was timely since the notice said that the tender may be made before the sale. The bank

would properly have pointed out that under paragraph 19 a tender must be made at least five days before the sale.

The plaintiffs in this case were prejudiced by any failure to comply with the provisions of paragraph 22. Paragraph 22 demands strict compliance, regardless of the existence, or not, of prejudice to a particular mortgagor." Pinti, 33 N.E.3d at 1223 n.20 (citing Foster, Hall & Adams Co. v. Sayles, 100 N.E. 644, 646 (Mass. 1913)).

After all, the bank is the one writing the notice and has ample opportunity and expertise to make it entirely accurate. It may take some imagination to consider every possible way it could be misleading; but the foreclosure procedure allowed to the bank is itself favorable to the bank. In exchange, both accuracy and avoidance of potential deception are conditions of the validity of the foreclosure, lifting from the Thompsons the need to show prejudice. The state-court reading of Massachusetts law binds a federal court sitting in diversity. N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 38 (1st Cir. 2001).

In sum, the BNY had no obligation under paragraph 19 to lay out its procedures, but it did have an obligation under paragraph 22 to provide notice and, under Pinti, to make anything it did say accurate and avoid potential deception. Words are usually elastic, but it does not matter that the purist could well think that the notice in this case was potentially deceptive rather than literally inaccurate

The plaintiff Amended Verified Complaint squarely pled the strict-compliance requirement, supported by both the Pinti holding and the rationale supplied for the holding, invalidates the April 2018 foreclosure and triggered violations of MGL 93a and MDCRA . Plaintiff has also pled in his Verified Amended Complaint that defendant BNY & SPS failed to:

**Plaintiff Has Pleaded Viable claims against defendant BNY & SPS for Massachusetts Regulations Act, Massachusetts Unfair & Deceptive trade Practices Act.**

Defendants stated that" Jones Cannot Sue to Enforce the Debt Collection Regulation" they also defendants used case law "See Jones v. NCO Fin. Servs., No. 13–12101DJC, 2014 WL 6390633, at *4 (D.Mass. Nov. 14, 2014) (concluding that there is "no indication that a private right of action exists" under 940 C.M.R. § 7.00 and dismissing claim); Brown v. Southwest Credit Systems, L.P., No.: 18-cv-10238-DJC, 2018 WL 6345491, at * 3 (D.Mass. Dec. 5, 2018) (same) they are misled.

The case law that they used the plaintiff were suing for monetary damages under the Massachusetts Regulations Act, here plaintiff is not asking for monetary damages under the Massachusetts Regulations Act (See Count V plaintiff amended complaint wherefore statement).

In plaintiffs count V I am only asking the court to "find that all defendants actions under the **Massachusetts Debt Collection Regulation Act 940 CMR 7:00 et seq. (**MDCRA): constituted an unfair or deceptive act or practice which triggered a violation of MGL 93a". plaintiff is not suing to enforce the MDCRA plaintiff is suing to find that the violation of the MDCRA triggered a violation of the MGL 93a. Plaintiff sent both defendants a MGL 93a demand letter (See Exhibits to Verified Amended Complaint.

Defendant Servicer Countrywide in 2005 sent plaintiff a Notice of acceleration defendant BNY foreclosed in Dec 2007, then in 2017 defendants BNY servicer SPS sent plaintiff anther notice of acceleration and foreclosed again, Defendant BNY or its servicer SPS never sent plaintiff a "NOTICE OF RESCISSION OF ACCELERATION.

Plaintiff send a pre-suit MGL 93a demand letter to defendants BNY & SPS and laid out some of

their Unfair & Deceptive trade practices acts before plaintiff filed his complaint in the federal

district court.

Respectfully Submitted

/s/ Paul Jones                                                                                    August 27, 2019


Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

Peter F. Carr,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Two International Place, 16th Floor

Boston, MA 02110-2602

Telephone: 617.342.6800 Facsimile:

617.342.6899

pcarr@eckertseamans.com

## **CERTIFICATE OF SERVICE**

I Paul Jones plaintiff Certify that I have mailed a copy to defendant's attorney of record, a true and

correct copy of the foregoing has been furnished via USP mail to the above-mentioned individuals

On this 27th day of August 2019.

Respectfully Submitted

*/s/ Paul Jones*

Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

Peter F. Carr,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Two International Place, 16th Floor

Boston, MA  02110-2602

Telephone: 617.342.6800 Facsimile:

617.342.6899

pcarr@eckertseamans.co

## **VERIFICATION OF OPPOSITION AND CERTIFICATION**

### **STATE OF MASSACHUSETTS**

#### **Plaintiff, Paul Jones, states as follows**

I am the Plaintiff in this civil proceeding.
I believe that this opposition to defendants 12 B 6 motion Bank of new York & SPS is well-grounded in fact and warranted by existing
law or by a good faith argument for the extension, modification or law.

I believe that this opposition to defendants 12 B 6 motion is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant (s). I have filed this opposition in good faith and solely for the purposes set forth in it. Each and every exhibit which has been attached to this opposition to defendants 12 B 6 motion is true and correct copy of the original.

Except for clearly indicated redactions made by me where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Paul Jones        */s/ Paul Jones*

August 27,2019